THE STATE, THE MAYOR AND ALDERMEN OF THE CITY
OF PATERSON, PROSECUTORS, v. THE BOARD OF CHOSEN
FREEHOLDERS OF THE COUNTY OF PASSAIC.

1. By force of the second section of the act of April 9th, 1892 (*Pamph.
L., p.* 471), boards of chosen freeholders in counties of the second class
are forbidden to grade, macadamize or improve any ordinary high-
way under their control, except with money obtained from the sale
of road bonds.
2. Under the act of April 2d, 1878 (*Rev. Sup., p.* 96), a board of chosen
freeholders has no right to make an excessive appropriation for one
class of expenditure, in order that with the surplus it may eke out
deficiencies in others. An honest estimate of the probable expendi-
ture in each class is required by the statute.
3. In *certiorari,* an illegality not apparent on the face of the proceedings
must be specially pointed out in the reasons filed, or it will not avail
for reversal.

On *certiorari.*

Argued at February Term, 1894, before Justices DIXON
and ABBETT.

For the prosecutors, *Thomas C. Simonton, Jr.*

For the defendant, *De Witt C. Bolton.*

The opinion of the court was delivered by

DIXON, J.   This *certiorari* brings up the resolution passed
by the board of chosen freeholders of Passaic county, at the
annual meeting on May 10th, 1893, making its appropria-
tions for the fiscal year beginning June 1st, 1893, and order-
ing taxation to meet the same.

By stipulation between the parties, all matters connected
with the appropriation for lighting roads by electricity are
eliminated from the cause.   There remain to be considered
two questions—one as to the right of the board to impose

taxes for "new work on roads" outside of repairs, the other as to its right to have $73,000 assessed for the "payment of debt."

The first question turns upon the construction of the supplement to an act approved March 19th, 1889, entitled "An act to enable boards of chosen freeholders to acquire, improve and maintain public roads" (*Pamph. L.*, *p.* 58), which supplement was approved April 9th, 1892. *Pamph. L.*, *p.* 471.

The original act and its previous supplements (*Pamph. L.* 1890, *pp.* 89, 292) had empowered the board of chosen freeholders in any county to assume control of any public roads in the county, which were then to become. known as "county roads," and thereafter to grade, macadamize and otherwise improve them, and to raise the money for such improvement partly by tax and partly by the issue of county bonds.

There were also, at the time of the passage of this supplement of 1892, several other statutes, under various titles, by the terms of which boards of chosen freeholders could improve certain public roads in their counties and could levy taxes to meet the cost thereof. *Vide Pamph. L.* 1882, *p.* 40 ; *Pamph. L.* 1887, *p.* 175 ; *Pamph. L.* 1888, *p.* 162 ; *Pamph. L.* 1890, *p.* 294 ; *Pamph. L.* 1882, *p.* 177 ; *Pamph. L.* 1883, *p.* 225. The roads embraced in these statutes had, some of them, been toll-roads, but at the date of the supplement of 1892 they differed in no particular from the roads referred to in the act of March 19th, 1889. All the enactments heretofore cited related to what were then ordinary public roads, lying wholly within a single county and having no essential characteristics distinguishing them from each other.

Under these circumstances, the supplement of 1892 enacted that, in counties of the second class, no more than $350,000 of bonds should be issued under the act of 1889 and its supplements, and the board of chosen freeholders should not grade, macadamize or improve any road in the county, except with money obtained from the sale of bonds under said act and supplements, and that all acts and parts of acts in conflict therewith should be repealed.

Hence arises the question for decision whether this statute prevents boards of chosen freeholders in counties of the second class (to which Passaic belongs) from levying a tax directly for the grading, macadamizing or improvement of any public roads, not only those which became "county roads" under the act of 1889, but also those of like character which had become county roads in the same sense under other laws.

Such, I think, is the meaning of the statute. All the laws which have been cited are *in pari materia*, the improvement of ordinary highways by the county authorities, and therefore should be construed together, even though their titles may be verbally different. The language of this supplement is broad enough to include all the highways which form the subject of these various laws; indeed, it is as general as possible— "any road in the county"—and I find no sufficient reason for restricting its natural scope. Article 4, section 7, paragraph 11, of the state constitution prohibits the passing of private, local or special laws for laying out, opening, altering and working roads and highways, and, under the impulse of this provision, courts should incline to give to general words in legislation on such subjects a general effect. That effect would be denied to the terms of this statute if its operation were confined to a part of those ordinary public roads which are placed under the supervision of the boards of chosen freeholders. What reason can be assigned for supposing that the legislature would intend to forbid immediate taxation by these boards for the improvement of some roads under their charge, while permitting it for the improvement of other roads of the same class? Such a purpose might come under the ban of the constitution. At any rate, it is not to be judicially imported into legislative expressions which more readily bear a sense in perfect harmony with constitutional duty.

My conclusion is that, because of the act of 1892, the board of chosen freeholders of Passaic county can expend in grading, macadamizing and improving the ordinary highways within its control only such money as it raises by the issue of road

bonds, and consequently that so much of the resolution under review as directs the levy of $25,000 for "new work on roads" must be set aside.

With regard to the second question, relating to the tax ordered "for the payment of debt, $73,000," the special reasons filed by the prosecutor for declaring the levy illegal are somewhat obscure, but they seem to mean that $33,000 of the amount will be met by the tax ordered at the same time to be assessed on the inhabitants of certain municipalities in the county for one-third of the cost of road work done therein by the board during the previous four years, for which third those municipalities were made responsible by the fourth section of the act of 1889. *Pamph. L., p.* 58.

The resolution under review was framed to comply with the act in relation to county expenditures, approved April 2d, 1878 (*Rev. Sup., p.* 96), which made it the duty of the board to declare annually the amount necessary to be raised "for payment of principal of bonded debt falling due in each year," and this amount of $73,000 is evidently alleged in this resolution to be needed for that purpose. But the state of the case laid before us does not show that the sum of $33,000 called for from these particular municipalities was to be applied to the payment of the county's bonded debt, and it may lawfully have been applicable in some other direction. Consequently, there is no basis of fact for the special reasons assigned.

The general reason for reversal is not available, because on its face the resolution is legal. *State* v. *Kirby*, 2 *South.* *835; Griffith* v. *West*, 5 *Halst.* 350; *New Jersey Railroad and Transportation Co.* v. *Suydam*, 2 *Harr.* 25, 69.

If, however, we might pass by the reasons filed and consider the matter as presented only in the state of the case and the briefs of counsel, *pro* and *con*, the illegality of this item would be manifest.

As already indicated, this sum of $73,000 is declared by the resolution to be required to meet the principal of bonded debt falling due during the succeeding year. But, according

to the state of the case, such principal would amount to only $39,456.

Counsel for the board defends this discrepancy on the ground that the board had a right to name an excessive sum because the surplus might be needed to make up deficiencies in other items which could not be accurately estimated, and by the act of 1878 the board was authorized to transfer sums from one account to another.

Such a contention is, we think, plainly untenable. It ignores the duty, unquestionably imposed by the statute, of making honest estimates of the probable expenditure necessary for the several items designated. This obligation is not at all weakened by the permission given to eke out the deficiency of one appropriation from the surplus of another when the honest estimates have proved to be erroneous. It is not pretended that the figure, $73,000, was the result of such an estimate or that there was any ground for expecting that more than $39,456 would be required for the object stated.

However, because sufficient reason for reducing this appropriation has not been duly assigned, it must remain undisturbed.

The prosecutor may have judgment for costs.