AMERICANS UNITED FOR SEPARA-
TION OF CHURCH AND STATE
et al., Plaintiffs,

v.

Robert G. BENTON, State Superintendent
of Public Instruction of the State of
Iowa, et al., Defendants.

Brian Riordan, a minor by his next
friend, et al., Intervenors.

Civ. No. 75–213–2.

United States District Court,
S. D. Iowa, C. D.

Dec. 15, 1975.

Supplemental Order Jan. 26, 1976.

Joseph Z. Marks, Joseph L. Marks, Des Moines, Iowa, for plaintiffs.

Roger H. Ivie, Des Moines, Iowa, for defendants.

Gordon E. Allen, Des Moines, Iowa, for Iowa Civil Liberties Union (plaintiff).

John J. McLaughlin, Jerry E. Williams, Des Moines, Iowa, for intervenors.

Before STEPHENSON, Circuit Judge, HANSON, Chief District Judge and STUART, District Judge.

STEPHENSON, Circuit Judge.

Plaintiffs in this action[1] are a combination of individual citizen taxpayers and organizations who join in asserting that the June 6, 1975, amendments to chapter 285 of the Iowa Code violate the First and Fourteenth Amendments to the Constitution of the United States. Plaintiffs seek to permanently enjoin the allocation or use of any public funds to implement the school transportation program pursuant to the chapter 285 amendments. These amendments, it is alleged, are unconstitutional in that they allow for the transportation, without charge to the students, of nonpublic school students across school district lines, an opportunity which is not afforded to public school students.

---

1. An objection has been made regarding the standing of the Iowa Civil Liberties Foundation as a plaintiff in this action. The standing of all other plaintiffs has been stipulated to by the parties. Inasmuch as there are proper plaintiffs before the court, this issue of standing need not be reached.

Defendants herein are the Iowa State Superintendent of Public Instruction, the State Board of Public Instruction, various other state officials, and an assortment of district school superintendents throughout Iowa. In addition, a group of parents of children who attend nonpublic schools in Iowa have been allowed, pursuant to Fed.R. Civ.P. 24, to intervene as defendants. This three-judge court was convened as provided by 28 U.S.C. §§ 2281, 2284 (1970). Jurisdiction over this action is conferred by 28 U.S.C. §§ 1331, 1343(3), 2201, 2202 (1970).

The challenged amendments to chapter 285 made a significant change in the options available to school districts in order to satisfy their statutory obligations with regard to transportation of nonpublic school children.[2] Prior to the amendments, the State Board of Public Instruction did not allow the buses of one school district to cross over into another district for purposes of picking up or discharging either public or nonpublic school students. Thus, if a student wished to attend a school in a district other than the one in which he resided, the student was required to furnish his own transportation either to that school or to a point in the other district where he could board a bus operated by the receiving district.[3] If the latter transportation option was chosen, the student's parents were required to pay the pro rata cost of the transportation in the other district.[4] This requirement was promulgated in furtherance of the policy of the State Board of Public Instruction to discourage competition among school districts for students and to stabilize school enrollment figures.

Under the 1975 amendments two new options are available to school districts with respect to the transportation of nonpublic school students who choose to attend a school in a district other than that of their residence, if that school is located in a district contiguous to the district in which the student resides. One option is for the resident school district to transport its nonpublic school students to the nonpublic school in the adjacent district. The second option allows the resident district to contract with the contiguous district in which the nonpublic school is located to have that district's buses cross into the resident district to pick up and discharge students. It was stated to this court, without objection, that both

2. Those amendments provide in relevant part as follows:

[§ 285.1(16)]
As an alternative to the provisions enumerated in this subsection, subject to the provisions of section 285.9, subsection 3, where practicable, and at the option of the public school district in which a nonpublic school pupil resides, the school district may transport a nonpublic school pupil to a nonpublic school located outside the boundary lines of the public school district if the nonpublic school is located in a school district contiguous to the school district which is transporting the nonpublic school pupils, or may contract with the contiguous public school district in which a nonpublic school is located for the contiguous school district to transport the nonpublic school pupils to the nonpublic school of attendance within the boundary lines of the contiguous school district.
    *    *    *    *    *    *
[§ 285.1(17)]
Contracting with a contiguous public school district to transport resident nonpublic school pupils the entire distance from the nonpublic pupil's residence to the nonpublic school located in the contiguous public school district or from the boundary line of the public school district to the nonpublic school.

3. Pursuant to Iowa Code §§ 285.5, 285.1(17)(b), the resident or receiving district could also hire private carriers for the purpose of the intradistrict transportation of either public or nonpublic students if "transportation by school bus is impracticable or not available or other existing conditions warrant it."

4. We note that even prior to the 1975 amendments parents of nonpublic school students arguably could, by designating a nonpublic school outside the resident district as the "school designated for attendance" under § 285.1(14), be reimbursed up to forty dollars per pupil per year for transporting their children across district lines. Parents of public school students do not have the same power of school designation. To the extent that chapter 285 allows for reimbursements to parents for expenses incurred in transporting nonpublic school students across district lines to attend religiously-oriented schools, it is subject to the same constitutional analysis as the 1975 amendments specifically challenged in this action.

these new options are currently being implemented in Iowa.

The gravamen of this suit is the fact that neither of these two new transportation options is available to public school students. In plaintiffs' view this disparity of treatment violates the Establishment Clause of the First Amendment. We agree and hold that the June 6, 1975, amendments to chapter 285 of the Code of Iowa are unconstitutional.

■ The First Amendment to the Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." This clause was made applicable to state action by the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303–05, 60 S.Ct. 900, 903–902, 84 L.Ed. 1213, 1217–1218 (1940).

As stated in *Americans United for Sep. of Church and State v. Oakey,* 339 F.Supp. 545, 549 (D.Vt.1972):

The theory behind the First Amendment's Establishment Clause proscription is simply stated. In order that any funds, goods, or services granted by the state do not have the impermissible effect of advancing religion, the state must see that the effects of any such grant will not permit of their being put to religious uses.

Plaintiffs assert that the religious character of the nonpublic schools singled out for benefit by the challenged 1975 amendments results in an Establishment Clause violation.

The record reveals that for the 1974–75 school year 63,016 students in Iowa attended nonpublic schools. Of that number 62,-267, in excess of 98.8 percent, were enrolled in schools with a religious affiliation. As the Supreme Court noted in *Board of Education v. Allen,* 392 U.S. 236, 245, 88 S.Ct. 1923, 1927, 20 L.Ed.2d 1060 (1968), "religious schools pursue two goals, religious instruction and secular education." We are satisfied that the Iowa nonpublic schools whose students might take advantage of 1975 transportation amendments are, almost exclusively, church-related and religion-oriented.

■ However, the mere fact that students attending religiously-affiliated nonpublic schools may benefit from a state aid program does not necessarily result in a violation of the Establishment Clause. This argument was rejected long ago by the Supreme Court in *Bradfield v. Roberts,* 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168 (1899). Similarly, "not every law that confers an 'indirect,' 'remote,' or 'incidental' benefit upon religious institutions is, for that reason alone, constitutionally invalid." *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973). Any law challenged on Establishment Clause grounds must be carefully examined to determine "whether it furthers any of the evils against which that Clause protects." *Id.* at 772, 93 S.Ct. at 2965. Primary among those evils are included "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Comm'n,* 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970).

■ The foundation of the modern Establishment Clause cases, particularly those that involve transportation, is *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), in which the Supreme Court upheld state reimbursement for transportation expenses to parents of children attending both public and nonpublic schools. The legislative purpose behind passage of the law was to provide these benefits equally to all school children. In recognition of the Free Exercise Clause, the Court said that the state could not "exclude individual [members of any faith] * * * from receiving the benefits of public welfare legislation." *Id.* at 16, 67 S.Ct. at 512. On the other hand, the Establishment Clause forbids the state from enacting laws "which aid one religion, aid all religions, or prefer one religion over another." *Id.* at 15, 67 S.Ct. at 511.

Mindful of these limitations, the Court commented that the statute in question

"approaches the verge" of the state's constitutional power. *Id.* at 16, 67 S.Ct. at 511, 91 L.Ed. at 723. The Court concluded, however, that the First Amendment did not prohibit the state "from spending tax-raised funds to pay the bus fares of parochial school pupils as a part of a *general program* under which it pays the fares of pupils attending public and other schools." *Id.* at 17, 67 S.Ct. at 512 (emphasis added).

The continuing vitality of the principles announced in *Everson* has been acknowledged in all recent Establishment Clause decisions. *See, e. g., Meek v. Pittenger,* 421 U.S. 349, 359–60, 95 S.Ct. 1753, 1760–61, 44 L.Ed.2d 217, 228–229 (1975); *Nyquist, supra,* 413 U.S. at 770–75, 93 S.Ct. at 2964–2966, 37 L.Ed.2d at 961–964; *Lemon v. Kurtzman,* 403 U.S. 602, 611–12, 91 S.Ct. 2105, 2110–2111, 29 L.Ed.2d 745, 754–755 (1971); *Board of Education v. Allen, supra,* 392 U.S. at 241–44, 88 S.Ct. at 1925–1926, 20 L.Ed.2d at 1064–1066. Our decision in the instant case is influenced in great part by the constitutional parameters established in the school transportation area by the *Everson* case.

◼ In recent years the Supreme Court has developed three tests to serve as guidelines to be used in determining whether the "wall of separation between church and state"[5] has been breached. *See Meek v. Pittenger, supra,* 421 U.S. at 358, 95 S.Ct. at 1759, 44 L.Ed.2d at 227; *Nyquist, supra,* 413 U.S. at 773, 93 S.Ct. at 2965, 37 L.Ed.2d at 962. In order to satisfy the dictates of the Establishment Clause, the law in question, first, must have a clearly secular legislative purpose, *Epperson v. Arkansas,* 393 U.S. 97, 107, 89 S.Ct. 266, 272, 21 L.Ed.2d 228, 236 (1968); *McGowan v. Maryland,* 366 U.S. 420, 445, 81 S.Ct. 1101, 1115, 6 L.Ed.2d 393, 410 (1961); second, must have a principal or primary effect that neither advances nor inhibits religion, *Board of Education v. Allen,* 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060, 1065 (1968); and, finally, the statute must avoid excessive entanglement in religion by the government, *Walz v. Tax*

*Comm'n, supra,* 397 U.S. at 674, 90 S.Ct. at 1414, 25 L.Ed.2d at 704.

◼ Applying these standards to the challenged legislation, we initially consider whether the amendments reflect a secular legislative purpose. The state contends that the objective of the 1975 amendments to chapter 285 of the Iowa Code was to provide all students with an opportunity for safe transportation between their homes and school. For purposes of this case, we accept as legitimate this avowed legislative purpose.

◼ A far more complicated problem is presented with respect to the second test. Our examination of the legislation at issue in light of relevant Supreme Court decisions leads us to the inescapable conclusion that the 1975 amendments have the unconstitutional primary effect of advancing religion.

It is, of course, true that as part of general legislation made available to all students, a State may include church-related schools in programs providing bus transportation, school lunches, and public health facilities—secular and nonideological services unrelated to the primary, religious-oriented educational function of the sectarian school.

*Meek v. Pittenger, supra,* 421 U.S. at 364–65, 95 S.Ct. at 1763 (1975), *citing Everson, supra; Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1970); *Nyquist, supra.* However, the legislation before us in the instant case does not reflect the policy of "benevolent neutrality" required for constitutional validation. *Walz v. Tax Comm'n, supra,* 397 U.S. at 669, 90 S.Ct. at 1411, 25 L.Ed.2d at 701. This is not a general benefit legislative scheme such as was involved in *Everson, Allen* and *Walz.* In this case nonpublic schoolchildren are being afforded benefits that are not available to public school students. Thus, the state aid involved here is flowing to a special class composed primarily of sectarian elementary and secondary schools which are an integral part of the religious mission of the churches which support them. This differential treatment "inescapably results in

---

5. *Reynolds v. United States,* 98 U.S. 145, 164, 25 L.Ed. 244, 249 (1878).

the direct and substantial advancement of religious activity"[6] and thus is unconstitutional. *See generally Public Funds for Public Schools v. Marburger,* 358 F.Supp. 29, 36 (D.N.J.1973), *aff'd,* 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974). *Cf. Meek v. Pittenger, supra,* 421 U.S. at 361–62 & n.12.

■ We do not believe that the fact that this aid in the form of transportation goes only to the nonpublic students and not to the schools themselves renders it immune from Establishment Clause consideration. In *Nyquist* the Supreme Court invalidated a tuition reimbursement and tax credit program directed at parents of children attending nonpublic schools. Regardless of whether those dollars reimbursed or credited to the parents ever found their way to the nonpublic schools, that money "represents a charge made upon the state for the purpose of religious education." *Nyquist, supra* at 791, 93 S.Ct. at 2975, *quoting from Committee for Public Educ. and Religious Liberty v. Nyquist,* 350 F.Supp. 655, 675 (S.D.N.Y.1972) (Hays, J., dissenting). Likewise, the money spent in Iowa for the transportation of nonpublic school students across district lines is a charge upon all taxpayers which benefits nonpublic schools by lessening their overall expenses and by necessitating the construction and maintenance of fewer schools. The absence of any

direct payments to these schools is immaterial.

Although the Supreme Court has not as yet decided a case directly on point with the issues involved here, we are convinced that the conclusion we reach regarding the constitutional invalidity of the 1975 amendments to Iowa Code chapter 285 is consistent with the Court's most recent expressions of policy in the Establishment Clause area. For example, the Court in *Nyquist* specifically distinguished the *Allen* and *Everson* cases on the basis that "[i]n both cases the class of beneficiaries included *all* schoolchildren, those in public as well as those in private schools." *Nyquist, supra,* 413 U.S. at 782 n.38, 93 S.Ct. at 2970. In addition, the Court in *Meek* noted that the textbook aid provisions before it differed from those found unconstitutional in *Marburger, supra,* in that the program attacked in the latter case was "not designed to extend to all schoolchildren * * * but rather was directed exclusively to parents whose children were enrolled in nonpublic, primarily religious schools." *Meek v. Pittenger, supra,* 421 U.S. at 362 n.12, 95 S.Ct. at 1762.[7]

■ Because we have found that the challenged legislation has the impermissible effect of advancing religion, we do not consider whether the legislative program em-

---

**6.** *Meek v. Pittenger, supra,* 421 U.S. at 366, 95 S.Ct. at 1763, 44 L.Ed.2d at 232. Although the Supreme Court continues to utilize the "primary effect" language in articulating its three-pronged test, it has declined to require that a "metaphysical judgment" be made regarding whether the secular objectives of challenged legislation outweigh its religious benefits. Instead, a court is only required to determine whether the legislation has the "direct and immediate effect of advancing religion." *Nyquist, supra,* 413 U.S. at 783 n.39, 93 S.Ct. at 2971. This is the standard we apply in the instant case.

**7.** *Public Funds for Public Schools v. Marburger,* 358 F.Supp. 29 (D.N.J.1973), *aff'd,* 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974), involved a challenge to two sections of an aid to nonpublic education bill enacted by the New Jersey legislature. These sections provided for reimbursement to parents of nonpublic school students of money expended on secular, noni-

deological textbooks and for the direct loan to nonpublic schools of supplies and auxiliary services. Both sections were found to have a primary effect that benefited religion and were therefore held to be constitutionally invalid. One rationale used to invalidate the textbook reimbursement provision was that, unlike the general program upheld in *Allen, supra,* it "limit[ed] the assistance provided therein only to parents of children who attend nonpublic, predominately religiously-affiliated schools and not to parents of all school children * * * ." *Id.* at 36.

The *Marburger* decision is of particular relevance in view of the fact that it was subsequently affirmed by the Supreme Court without opinion. *See* 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134. As noted by Justice Stewart in *Meek,* such an affirmance is a "decision on the merits, entitled to precedential weight." *Meek v. Pittenger, supra,* 421 U.S. at 366 n.16, 95 S.Ct. at 1764.

bodied in the 1975 amendments to chapter 285 would foster excessive entanglement of the state with religion in the sense of "comprehensive, discriminating, and continuing state surveillance," *Lemon v. Kurtzman,* 403 U.S. 602, 619, 91 S.Ct. 2105, 2114, 29 L.Ed.2d 745 (1971); or entanglement in the broader sense of continuing political strife over aid to education. *Meek v. Pittenger, supra,* 421 U.S. at 371–72, 95 S.Ct. at 1766–1767, 44 L.Ed.2d at 235–236; *Nyquist, supra,* 413 U.S. at 794, 93 S.Ct. at 2976, 37 L.Ed.2d at 975.[8]

A decree will be entered accordingly.

### ORDER

█ In accordance with the memorandum opinion filed this date, the defendants, their agents, employees, and successors in office are permanently enjoined from using or authorizing the use of public funds for the transportation of nonpublic school students across public school district lines under the 1975 amendments to Iowa Code chapter 285 and under Iowa Code § 285.-1(17)(c) (1975) to the extent that such reimbursement is for cross-district transportation of nonpublic school students. These same parties are further enjoined from all other participation in the administration or execution of the portions of the Iowa Code herein declared to be unconstitutional. Defendants' and intervenors' motions to dismiss are denied.

### SUPPLEMENTAL ORDER

In an order entered on December 15, 1975, this Court declared unconstitutional certain portions of Iowa Code chapter 285 as amended and enjoined the expending of any further funds for cross-district transportation of nonpublic school students undertaken in accordance with those statutory provisions. Defendants and Intervenors now request that we clarify that order with regard to expenses incurred by local school districts for transportation furnished prior

to the December 15, 1975, order and for which they have not been reimbursed by the state as contemplated in the legislation as originally passed. It is contended that these local school districts were relying in good faith upon the transportation provisions and should not be burdened with the expenses thus incurred.

It was our intention that the order and injunction of December 15, 1975, be given only prospective application. Allowing reimbursement of the school districts by the state for expenses that had accrued for transportation actually furnished prior to the entry of our order is not inconsistent with our finding that the provisions were unconstitutional. The reliance by the school districts on the validity of the statutory scheme was reasonable. Further, "this is not a case where it could be said that [the school districts] acted in bad faith or that they relied upon a plainly unlawful statute." *Lemon v. Kurtzman,* 411 U.S. 192, 207, 93 S.Ct. 1463, 1472, 36 L.Ed.2d 151 (1973).

█ Accordingly, we direct that the order and injunction entered by this Court on December 15, 1975, has prospective application and that the state is not barred from reimbursing local school districts for expenses incurred in furnishing transportation prior to the entry of our order in connection with implementing the cross-district transportation scheme invalidated therein. No reimbursement may be made for cross-district transportation of nonpublic school students provided after December 15, 1975.

---

8. Plaintiffs have also contended that since the amendments grant benefits to nonpublic schoolchildren and not to public schoolchildren, they violate the Equal Protection Clause of the Four-teenth Amendment. In view of our resolution of this case on other grounds, we do not reach that issue.