FRITZ MEYER, LANCASTER COUNTY ASSESSOR, APPELLANT, v. ROBERT COLIN ET AL., APPELLEES.

281 N. W. 2d 737

Filed July 17, 1979. No. 42238.

Bauer, Galter, Geier, Flowers & Thompson, for appellant.

Mattson, Ricketts, Davies, Stewart and Calkins and Richard M. Duxbury and Perry, Perry, Witthoff & Guthery, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The appellant, Fritz Meyer, was, at the time this suit was filed, the County Assessor of Lancaster County. The defendants, appellees here, are the members of the Board of Commissioners of Lancaster County.

This suit for an injunction involves the budgetary practices of Lancaster County and, specifically, the budget year of July 1, 1977, to June 30, 1978.

In his petition, Meyer alleged that the Commissioners had created, in 1976, a budgetary account denominated "Contingent Salary Adjustment Fund." At the same time, they had encouraged officeholders and department heads, including Meyer, to exclude from the budget submitted by the officeholders all expected salary raises, including cost-of-living raises. When Meyer ignored that instruction and included in his budget an amount equal to estimated cost-of-living raises, the Board itself deleted the amount. All such proposed increases are included instead within the "contingent" fund and granted during the course of the year as the Commissioners may determine.

Meyer sought to enjoin this practice as violative of the County Budget Act, section 23-901 et seq., R. R. S. 1943, and the Nebraska Budget Act, section 23-921 et seq., R. R. S. 1943. The District Court found that

it is within the discretion of the County Board to establish a separate fund for payment of departmental employees' salaries; that appropriation from the fund, because of "emergencies," is within the discretion of the Commissioners; and that the record did not show an abuse of that discretion. The court further found that unexpended funds in the "contingent" fund can appropriately be carried over to the succeeding budget year without violating the county mill-levy limitation; and finally, that the plaintiff did not sustain his burden of proof in establishing that the Commissioners violated the budget law or interfered with Meyer's operation of his office. Meyer appeals. We affirm in part and reverse in part.

At the outset we note, as conceded in oral argument, that Meyer is no longer County Assessor and the obvious fact that the budget year has expired. As a general rule, appellate courts do not sit to give opinions in cases or controversies which have become moot. An appeal or error proceeding will be dismissed where no actual controversy still exists between the parties at the time of the hearing. This general rule, however, does not apply to appeals involving matters of public interest. State ex rel. Coulter v. McFarland, 166 Neb. 242, 88 N. W. 2d 892; Braesch v. DePasquale, 200 Neb. 726, 265 N. W. 2d 842; 5 C. J. S., Appeal & Error, § 1354 (1), p. 404.

As the questions presented involve the public's interest in the continuing budgetary process of the counties and the relationship of the officeholders with the various Commissioners and supervisors, we have agreed to decide the issues presented.

Section 23-923, R. R. S. 1943, requires the County Board, as the "governing body" for the county, to prepare each year a proposed budget statement containing prescribed information on funds on hand, estimated revenue, and estimated expenditures, plus necessary cash reserves. Forms are prescribed and

furnished for this purpose by the State Auditor of Public Accounts. In practice the County Board meets this obligation by requiring each department head to submit a budget for his department. Some of these department heads are, as in the case of the appellant, elected officials.

The record shows that no later than the 1976 fiscal year the Board began instructing the department heads to omit anticipated cost-of-living raises from their budget requests. A memorandum concerning preparation of the fiscal 1977-78 budget contained the following instruction to department heads: "Develop personnel expenditures based on current salary plus normal merit increases commencing at time of eligibility. *Do not include any anticipated increase in the salary schedules.*" (Emphasis supplied.) At the same time, the Board established a "Contingent Salary Adjustment Fund" for the purpose of replenishing, at some time during the year, department budgets which had been depleted by the omission of the amount for cost-of-living raises.

In her testimony, Commissioner Gauger gave two reasons for the Board's adoption of this practice. First, the cost-of-living raise percentage is bargained for on a countywide basis and the Board does not find it helpful to have each department make a request for that amount. Second, Commissioner Gauger testified that in fixing the budgets for salaries for the individual officeholders, the Board concluded that the allocated salary account would be sufficient, even allowing for percentage or cost-of-living wage increases, by reason of the fact that, in their experience, few officers obtained employment of the maximum number of allowable employees throughout the fiscal year. This was due to amounts not paid by reason of vacancies which occur during the fiscal year and delay until replacements are hired. This was referred to in testimony as "attrition." The "contingent" fund was set up, according

to Commissioner Gauger, as insurance against the eventuality that the projections on attrition were incorrect. In the event that the budget of any particular office did run dry due to salary increases, it would be supplemented by an "emergency" transfer of funds from the "Contingent Salary Adjustment Fund" under the procedure authorized by sections 23-928 and 23-929, R. R. S. 1943. That procedure allows the Board, after public notice and hearing, to transfer money from one fund to another whenever, during the fiscal year, it becomes clear that "due to unforeseen emergencies there is temporarily insufficient money in a particular fund to meet the requirements of the adopted budget of expenditures for that fund, * * *."

In 1976, $443,180 was appropriated to the fund. In 1977, the amount was increased to $500,000.

This amount was determined by applying a fixed percent, usually 6 percent, to the entire requested salary budgets of all county departments. In other words, the fund was budgeted for an amount equal to the county's "maximum exposure" for cost-of-living raises even though it was believed by the Board that this amount was excessive.

In practice, the "Contingent Salary Adjustment Fund" was little used. Generally, the officeholders appear to have operated within the salary budget originally set by the Commissioners. This was the case in both 1976 and 1977 fiscal years in appellant's office of the County Assessor. Substantial portions of the "contingent" fund were transferred at the end of both the 1976 and 1977 fiscal years to the general fund.

Meyer attacks this budgetary practice on several grounds. One is that by overfunding the "Contingent Salary Adjustment Fund" and carrying the excess over to the general fund, the County Board somehow exceeds the maximum mill levy for the fiscal year. This contention is without merit for it

appears to be addressed merely to the *size* of the allocation, an area where the governmental body is accorded great discretion. The county is authorized to levy, up to its mill-levy maximum, enough taxes to cover all expenditures, as estimated by the Board, plus a cash reserve of up to 50 percent of those expenditures. §§ 23-923 and 23-927, R. R. S. 1943. In determining the amount to be levied, unencumbered balances, in this case the amount left in the "Contingent Salary Adjustment Fund," are actually subtracted from the estimated expenditures. § 23-924, R. R. S. 1943. Meyer points to no violation of the law in this accumulation and successively higher appropriation. The remedy for excessive allocation lies largely with the electorate. Especially pertinent is the comment of the Wisconsin court in State v. Zimmerman (Wis., 1924), 197 N. W. 823: "Legislative bodies may appropriate money wisely or unwisely, too sparingly or too extravagantly; but so long as they keep within the limits of the organic law they are accountable not to the courts, but to their constituents alone."

Meyer also asserts that the appropriation from the "Contingent Salary Adjustment Fund" characterized as "emergency" transfers under section 23-928, R. R. S. 1943, was improper since no true emergency existed but was, instead, an anticipated or expected underappropriation of funds necessary to operate a department. Meyer's contention may have some validity, as will be discussed below, but it is sufficient to note at this point that we are not directed specifically to the terms and conditions of any specific appropriation from the fund. A determination of "emergency" under the Nebraska Budget Act is a question for the County Board and, like other determinations by a legislative body, will not be disturbed on appeal unless there has been an abuse of discretion. See Roberts v. Thompson, 82 Neb. 458, 118 N. W. 106. Except in very general

terms, the record is absolutely devoid of the description of any such emergency appropriation although presumably, and from the budget records, there have been such appropriations. The trial court correctly held that there was insufficient evidence to show an abuse of discretion.

Meyer next argues that the deletion from his budget, of the amount requested by him for cost-of-living raises for his employees, constitutes an unwarranted interference by the County Board with the operation of the office of the County Assessor. The question presented is actually distinct from mere budgeting procedures and relates, instead, to the independence and discretion which are to be afforded an elected officer. It is clear that section 23-1111, R. R. S. 1943, requiring the approval of salaries by the County Board, does not allow the Board to arbitrarily reduce the salaries recommended by the elected officer. See Bass v. County of Saline, 171 Neb. 538, 106 N. W. 2d 860. Similarly, the power of the Board to reduce requests submitted by the various offices, provided in section 23-908, R. R. S. 1943, does not give the Board the authority to budget a particular office out of existence or to unduly hinder the officer in the conduct of his duties. Mr. Meyer testified he was running his office shorthanded because of the cut in his requested budget. This condition was, however, essentially self-imposed. At no time did he request a supplemental appropriation. Without regard to the appropriateness of its doing so, it fully appears that the Board stood ready to make such appropriations. There is no evidence of any intent of the Board to interfere or of any actual interference by the Board in the operation of Mr. Meyer's office.

The evidence presented was thus insufficient to show any injury suffered or likely to be suffered by Mr. Meyer in his position as County Assessor. On that ground alone, the trial court was correct in de-

nying the requested injunction. See Steffen v. County of Cuming, 195 Neb. 442, 238 N. W. 2d 890. However, we think it appropriate to comment on the budgeting procedure which really lies at the heart of the complaint raised by Mr. Meyer in this action. We consider that procedure to run contrary to the intent of the budget act. As stated in section 23-921, R. R. S. 1943: "The purpose of this act is to require governing bodies of this state to which this act applies to follow prescribed budget practices and procedures and make available to the public pertinent information pertaining to the financial requirements and expectations of such governing bodies so that intelligent and informed support, opposition, criticism, suggestions, or observations can be made by those affected; * * *."

The budget forms provided by the State Auditor in furtherance and by direction of the act classify expenditures quite logically by department. While it would be impossible, without unduly hampering management of the county's affairs, to state every subordinate item with absolute specificity, the budget should, so far as practical, inform the public of the amounts to be spent in the conduct of each office. It would clearly be improper to budget for the salaries of all county employees in one lump account to be controlled by the County Board. That is what was done here, albeit to a lesser extent, with cost-of-living raises. The Board claims this was not their intent and that their initial estimates for department expenditures were accurate. Yet, the creation of the "Contingent Salary Adjustment Fund," the statement concerning its purpose, and certainly its size ($500,000 in 1977), betray a lack of confidence in the initial estimates. The Legislature granted the governmental bodies power to transfer funds from one account to another, but only in the case of "unforeseen emergencies." By that phrase, the Legislature may not have been referring to anything par-

ticularly calamitous. Some courts have found similar phrases to mean anything which was reasonably unforeseeable at the time the initial action was taken. See, for example, Fitts v. Gibbs, 40 Wash. 2d 444, 244 P. 2d 241. As stated before, the governing body is entitled to substantial discretion in this area. In any event, we need not draw lines in this case for, if the limitation has any meaning at all, it is at least a message to the governing body not to anticipate the free use of the transfer power to the detriment of making accurate and specific budget estimates in the first place.

We do not say that the use of a particular account violates the act. merely because it is labeled "contingent." A contingency is something which is not yet certain and the governing body may undoubtedly budget for that event. But where the anticipated contingency is merely the failure to budget properly in the first place, it is time to try again. The problem was recognized in State v. Board Chosen Freeholders, 56 N. J. L. 459, 29 A. 331. There was a budget item of $73,000 "for the payment of debt" when it appeared only $33,000 was needed for that purpose. "Counsel for the board defends this discrepancy on the ground that the board had a right to name an excessive sum, because the surplus might be needed to make up deficiencies in other items which could not be accurately estimated, and by the act of 1878 the board was authorized to transfer sums from one account to another. Such a contention is, we think, plainly untenable. It ignores the duty, unquestionably imposed by the statute, of making honest estimates of the probable expenditure necessary for the several items designated. This obligation is not at all weakened by the permission given to eke out the deficiency of one appropriation from the surplus of another, when the honest estimates have proved to be erroneous."

In its second finding, the trial court held: "The

defendants acting in their capacity as the Lancaster County Board of Commissioners have authority to approve the budget for departmental employees' salaries. It is within the discretion of the County Board to establish a fund for payment of those salaries or any part thereof." To the extent that finding or the general finding for the Board would permit maintenance of a portion of departmental salary expenses in a separate, nondepartmental account, they are reversed. The order of the trial court is, in all other respects, affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.

CLINTON, J., participating on briefs.