STATE OF NEBRASKA EX REL. GARY L. BOUC, INDIVIDUALLY, AND GARY L. BOUC, AS NEXT FRIEND OF HIS MINOR SON, JOHN BOUC, APPELLEE, v. SCHOOL DISTRICT OF THE CITY OF LINCOLN, APPELLANT, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF THE CITY OF LINCOLN ET AL., APPELLEES.

320 N.W.2d 472

Filed June 4, 1982. No. 44149.

Edwin C. Perry of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for appellant.

Robert B. Crosby and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee Bouc.

Kermit A. Brashear II and Marybeth Frankman of Nelson & Harding, for amicus curiae Nebraska District, Lutheran Church—Missouri Synod.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is an action brought by the relator, Gary L. Bouc, as an individual and as the next friend of his minor son, John Bouc, seeking a writ of mandamus to compel the respondents to honor the Boucs' request for bus transportation for John to St. John the Apostle School, a nonprofit private school under the control of the Lincoln Diocese of the Catholic Church. This request was made in accordance with Neb. Rev. Stat. § 79-487 (Reissue 1976). The School District of the City of Lincoln responded by alleging that this section violated various provisions of the Constitutions of the United States and the State of Nebraska. Upon finding the statute constitutional, the District Court granted the writ of mandamus, ordering the school district to provide the requested bus transportation for John Bouc. The school district has ap-

pealed, assigning as error that § 79-487 violates article VII, § 11, and article III, § 18, of the Nebraska Constitution, and the first and fourteenth amendments to the U. S. Constitution. We affirm.

At the time this action was commenced, relator Gary L. Bouc resided with his wife and family, which included his 6-year-old son John, at 733 Sunny Slope Road in Lincoln, Nebraska. This residence is located within the area designated as the bus transportation boundaries for Meadow Lane public school, although, as noted above, John Bouc attended St. John the Apostle School. The Boucs' residence is located approximately 9 or 10 blocks east of St. John the Apostle School, which school is located "a couple blocks east of the Meadow Lane School."

Immediately prior to hearing this case, we were presented with a motion, filed by the relator-appellee, requesting that the appeal be dismissed because of mootness due to the fact that Gary Bouc and his family had moved from Lincoln to Fremont, Nebraska. The respondent-appellant resisted this motion. The case is obviously moot, and as a general rule would be subject to summary dismissal. However, that rule does not apply to appeals involving matters of public interest. *Meyer v. Colin,* 204 Neb. 96, 281 N.W.2d 737 (1979). We believe that this is such a case, and we agreed to hear arguments on the merits.

This is a mandamus action and, before the writ may issue, the evidence must show clearly and conclusively that the relator is entitled to the particular relief requested and that there is a legal obligation on the part of the respondents to act. *State ex rel. Newbold v. County of Buffalo,* 202 Neb. 813, 277 N.W.2d 246 (1979).

Although St. John's school does provide bus service for its students, the Boucs' residence was not on the route established for the St. John buses. When asked by his counsel to explain why he desired to

have his son John ride on the Lincoln Public Schools bus, Mr. Bouc replied: "Well, it's going to be a lot safer for him and a lot more convenient for us and, you know, it's a transportation service that we're supporting, just as the Lincoln Transportation System or any other public — and we feel we would like to take advantage of it like anyone else."

The statute under which the request was made, § 79-487, provides in part that in the event a public school district provides transportation facilities for schoolchildren to and from school, that district shall provide transportation facilities for children attending approved nonprofit private schools as well. Such facilities shall be provided only to private school children "who reside in a district which provides transportation to public school students, and such transportation shall extend only from some point on the regular public school route nearest or most easily accessible to their homes to and from a point on the regular public school route nearest or most easily accessible to the school or schools attended by such children. . . . Transportation shall be provided for nonprofit private school children only at times when transportation is being provided for public school children."

As alleged by the relator in his petition, the respondent School District of the City of Lincoln is providing transportation for students attending its schools in accordance with a specific policy statement. That policy statement generally provides that elementary students living farther than 1¼ miles from school shall be eligible for transportation on schoolbuses. We believe it is apparent from the record that John Bouc did not live farther than 1¼ miles from school. Therefore, under the guidelines adopted for elementary students, he would not be eligible for transportation and the relief sought in this action would have to be denied. However, it can be gathered by inference from the record that

some of those students living within the Meadow Lane School transportation district, as the Boucs did, also do not live farther than 1¼ miles from school and yet are afforded the use of bus facilities. Because of our determination at a later point in this opinion that students attending nonprofit private schools are entitled to use of the bus facilities under the same guidelines and restrictions as are public school students, we must conclude that John Bouc would be eligible for such services in this instance as well, assuming that the statute is valid.

In addition to elementary students, the guidelines adopted by the school district allowed junior high students living over 2½ miles from school to ride a bus to school. The policy of the school district was not to provide transportation for senior high school students. The parties agreed by stipulation that junior high students are not permitted to ride on those buses designated for elementary students, and elementary students are not allowed to ride the junior high buses. It is the position of the school district that § 79-487, as applied under these various regulations, is violative of various constitutional provisions.

Appellant's first contention is that § 79-487 violates article VII, § 11, of the Nebraska Constitution, which provides: "Notwithstanding any other provision in the Constitution, appropriation of public funds shall not be made to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof . . . ."

In light of the fact that this case was submitted on appeal prior to our decision in *Lenstrom v. Thone,* 209 Neb. 783, 311 N.W.2d 884 (1981), appellant goes to great lengths to persuade this court that, in spite of the 1972 amendment of article VII, § 11, the provision still prohibits all direct or indirect aid to nonpublic institutions. Whatever may have been the intent of those electors at the time they voted in favor

of that amendment, we believe that we fully discussed the impact of that change in *Lenstrom* and that little purpose would be served in doing so again at this time. We need only to reiterate our holding in *Lenstrom* which was to the effect that when the language of article VII, § 11, was changed from prohibiting appropriations "in aid of" nonpublic schools to a prohibition of appropriations "to" such institutions, "[t]he effect of the literal language of the amendment is to prohibit appropriations made 'to' a nonpublic school." *Id.* at 788, 311 N.W.2d at 888.

Both parties cite numerous authorities from other jurisdictions in support of their respective positions regarding § 79-487 and article VII, § 11. However, in no instance was a similar busing statute challenged under a constitutional provision that expressly declared that "appropriation of public funds *shall not be made to*" a nonpublic school or institution of learning. Instead, these other jurisdictions ruled on the question in light of constitutional provisions that prohibited appropriations "to or in aid of any religious sect . . ." or "for the support of any sectarian or denominational school," Cal. Const. art. IV, § 30, and art. IX, § 8; *Bowker v. Baker,* 73 Cal. App. 2d 653, 167 P.2d 256 (1946); or that prohibited the appropriation of public money "directly or indirectly, for the use, benefit, or support of any sect, church . . . ," Okla. Const. art. 2, § 5; *Gurney v. Ferguson,* 190 Okla. 254, 122 P.2d 1002 (1942); or, finally, provisions that prohibited the use of public funds "for the direct benefit of any religious or other private educational institution," Alaska Const. art. VII, § 1; *Matthews v. Quinton,* 362 P. 2d 932 (Alaska 1961).

Due to the restrictive interpretation given article VII, § 11, by this court in *Lenstrom,* it is difficult to draw any useful analogies between the present case and those cases which interpret what appear to be much broader constitutional provisions. In *Lenstrom*

we determined that a scholarship program which involved the granting of money directly to students to use for educational expenses at eligible postsecondary institutions (including nonpublic institutions) was not violative of the "literal" language of article VII, § 11, which we determined clearly prohibited only "appropriations made 'to' a nonpublic school." *Id.* at 788, 311 N.W.2d at 888. This holding was in spite of any indirect benefit that may have inured to a nonpublic institution due to a student's receipt of a grant under the program.

The record in the present action does not reflect that this is an instance involving a direct appropriation of public funds to a nonpublic institution. Instead, it involves the direct providing of transportation services to those students who attend a nonprofit private institution and who reside in a public school district that has elected to provide transportation for its public school students. In this respect, any benefit that may inure to the nonprofit private institution is merely incidental and certainly cannot be deemed to be an "appropriation . . . to" that institution. Under *Lenstrom* such an incidental benefit is insufficient to render § 79-487 violative of article VII, § 11. Therefore, appellant's first assignment of error is without merit.

Appellant next contends that § 79-487 is in violation of article III, § 18, which provides in pertinent part: "The Legislature shall not pass local or special laws in any of the following cases, that is to say:

. . . .

"Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . ." In a related manner, the appellant also contends that § 79-487 contravenes the equal protection provisions of U.S. Const. amend. XIV, § 1. These contentions are based upon the theory that in certain instances § 79-487 might provide transportation services to

nonprofit private school students beyond those services enjoyed by similarly situated public and proprietary private school students.

Appellant has outlined four such instances, the first of which envisions a situation wherein a private elementary student residing in a Class VI school district (providing educational services only for grades 7-12) would be allowed to ride the Class VI district's buses while the public elementary students of the Class I district (providing services for grades K-6 only), which would often be located within the Class VI district and may not provide transportation to its students, would not be allowed to ride the Class VI district's buses. A second situation might occur under the statutory requirement that the Lincoln Public Schools system must provide transportation or mileage payments in lieu thereof to students in grades K-9 who live over 4 miles from their public school. There is no such requirement for public high school students. Appellant alleges that § 79-487 may allow nonprofit private high school students to ride a public school bus in the Lincoln school system while their public counterparts could not. Thirdly, appellant points to the Lincoln Public Schools regulation that provides transportation for elementary students only if they live over 1¼ miles from their school, and raises the question of whether § 79-487 would require the school district to provide transportation to those private school students living on regular bus routes who live closer than 1¼ miles from their school. Finally, the appellant notes that the Lincoln Public Schools system provides separate buses for its elementary and junior high students and does not permit one grade level to ride on a bus designated for another grade level. Once again, the appellant contends that § 79-487 might allow nonprofit private elementary school students to ride a public junior high school bus while a similar privilege is denied their public counterparts.

It is unclear from reading the statute itself whether any of the discrepancies outlined above would be permissible under its provisions. The section only outlines the following general prerequisites: that the student attend an approved nonprofit private school; that the student reside within a public school district that provides transportation for its public school students; that the private school students will only be picked up and let off the buses at points on the "regular public school route"; and that transportation will only be provided for private school students "at times when transportation is being provided for public school children."

Of these factors, only the mention of "regular public school" routes and the limitation of the times when the services will be rendered provide any indication of whether the private school students are to receive any greater service than that provided for the public school students. However, even when we consider these two limitations, we are unable to state with certainty that the section precludes the occurrence of any of the situations mentioned above.

"The constitutional validity of an act of the Legislature is to be tested and determined, not necessarily by what has been done or possibly may be done under it, but by what the statute authorizes to be done under and by virtue of its provisions." *State ex rel. Douglas v. Thone,* 204 Neb. 836, 845, 286 N.W.2d 249, 254 (1979). As noted above, it is unclear exactly what the statute authorized to be done in this particular instance. While it is true that "when an ordinance or statute is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes sure its validity will ordinarily be given," *Starman v. Shirley,* 162 Neb. 613, 616, 76 N.W.2d 749, 752 (1956), the language of § 79-487 is so ambiguous as to be prohibitive of any valid construction without further inquiry.

"Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes. [Citation omitted.] Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine legislative intent. [Citation omitted.] Legislative intent is the cardinal rule in the construction of statutes. [Citation omitted.] The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of lawmakers. [Citation omitted.]

"To ascertain the intent of the Legislature we examine the legislative history of the act in question. 'The record of a floor explanation or debate is legislative history, and it may be an extrinsic, secondary source in statutory interpretation.' [Citation omitted.] 'In construing a legislative act, resort may be had to the history of its passage.' [Citations omitted.]" *Wang v. Board of Education,* 199 Neb. 564, 567, 260 N.W.2d 475, 477-78 (1977).

It becomes readily apparent after examining the legislative history of § 79-487, which was offered into evidence before the trial court, that the Legislature merely intended to extend the same transportation to nonprofit private school students as was being extended to public school students. Section 79-487 was introduced as L.B. 522 by the Education Committee and Senator Frank Lewis, the chairman of that committee. The following comments were made during hearings before that committee: "Senator Lewis: It [L.B. 522] simply provides that children along the route where there is transportation will be entitled to that transportation to that school regardless of what school they go to. I think the important issue at hand is that it is consistent with existing transportation. There is no transportation for public school students along the route and obviously there's no transportation for non-public students. If there is transportation for public school students, there

would be transportation provided for non-public school students along the same route where the bus is destined." Committee Hearing, 84th Leg., 1st Sess. 1 (March 17, 1975). Similar comments were made during the floor debate on this provision. "Senator Lewis: . . . The bill provides that students attending a nonpublic school will be provided transportation *as are other students* in that particular district along the same route. . . . The question before the body now is whether or not we wish to provide transportation *on the same basis for all students* regardless where they go to school. . . . It [L.B. 522] says that *all children will be treated alike* in regard to transportation. . . . Again, I think that this is important that the members of this body understand that we're not talking about the transportation, . . . of any student who is not qualified under the same condition that a student who attends a public school is qualified under." (Emphasis supplied.) Floor Debate, 84th Leg., 1st Sess. 4815, 4818 (May 16, 1975).

These remarks make it quite clear that the legislative intent and purpose in enacting § 79-487 was to extend transportation benefits to nonprofit private school students on the same basis as these benefits were enjoyed by public school students. Therefore, those guidelines and restrictions imposed upon public school students by the various local boards of education are and were intended to be equally applicable to the nonprofit private school students wishing to ride the buses of the public school system. Under no circumstances would the private school students be entitled to greater transportation benefits than those enjoyed by the public school students. Section 79-487 is not special legislation in this respect, and it contravenes neither article III, § 18, nor the equal protection clause of § 1 of the fourteenth amendment.

One last category which gives rise to the claim

that § 79-487 is special legislation violative of article III, § 18, and § 1 of the fourteenth amendment is the fact that the section provides only for those students who attend "nonprofit private schools." This, appellant contends, ignores the rights of those children who attend private proprietary schools. The record before this court presents evidence of only one such proprietary private school in the State of Nebraska: Montessori Educational Center, Inc. However, the record does not indicate whether said proprietary school has students in attendance who reside within a public school district that offers its students transportational services. As a result of that omission, we are unable to determine whether there are any students attending a proprietary private school who will be deprived of the benefits provided by § 79-487 in light of the section's restriction to "nonprofit private" school students.

Therefore, it is clear that the appellant lacks sufficient standing to challenge the section's exclusion of proprietary private school students from its benefits. Several jurisdictions have adopted the general rule that "one must be a member of the class discriminated against in order to have standing to attack a law as denying the equal protection of the laws." *Lague, Inc. v. State,* 136 Vt. 413, 416, 392 A.2d 942, 944 (1978). See, *Wirth v. Ehly,* 93 Wis. 2d 433, 287 N.W.2d 140 (1980); *Clark v. State,* 284 Md. 260, 396 A.2d 243 (1979); *Tavern Owners Ass'n v. County of Lake,* 52 Ill. App. 3d 542, 367 N.E.2d 748 (1977).

A similar rule was alluded to by the court in *Snyder v. Newton,* 147 Conn. 374, 161 A.2d 770 (1960). While the issue was not raised, the court did note the fact that Connecticut's version of § 79-487, which also distinguished between proprietary and nonprofit private school students, could not be challenged on equal protection grounds by the plaintiffs. "It does not appear that any of the plaintiffs are persons who are being denied transportation because they are at-

tending, or propose to attend, a private school conducted for profit. Since the plaintiffs are not members of the class which is claimed to be discriminated against, they cannot challenge the constitutionality of the statute on the ground in question [equal protection]." *Id.* at 380, 161 A.2d at 774.

It is obvious that, by the same token, the appellant in the present action, the School District of the City of Lincoln, is not and does not propose to be a student at a proprietary private school. Indeed, the record before the court is devoid of any evidence that there are students in the State of Nebraska who attend such proprietary institutions and who are being denied transportation on that basis under § 79-487. This lack of evidence alone provided a sufficient reason for the court in *West Morris Reg. Bd. of Ed., et al. v. Sills, et al.,* 58 N.J. 464, 279 A.2d 609 (1971), to disregard an equal protection challenge of New Jersey's counterpart to § 79-487 on the basis that the law discriminated against proprietary private school students. Similarly, we find ourselves compelled to withhold a decision on this matter until such time as a party with proper standing presents a sufficient record to raise the issue on appeal.

The appellant's final assignment of error challenges the validity of § 79-487 under the first amendment, respecting the establishment of religion. We are controlled in this area by *Everson v. Board of Education,* 330 U.S. 1, 67 S. Ct. 504, 91 L. Ed. 711 (1947), wherein the Court found that the board of education had not violated the first amendment by authorizing the reimbursement to parents of public and nonprofit private school children of money spent by the parents for the bus transportation of their children to and from school on buses operated by the public transportation system. This action was taken by the board pursuant to a statute which allowed the board to make rules and contracts for the transportation of children, " 'including the transportation of

school children to and from school other than a public school, except such school as is operated for profit in whole or in part.' " *Id.* at 3, n. 1. While acknowledging that the board's action assisted the children to reach their private schools and indeed may have made it possible for some children to attend private schools instead of public ones, the Court analogized the provision of such services with the provision of policemen to protect children going to and coming from private schools, as well as the provision of other general government services, such as police and fire protection, sewage disposal, and public highways and sidewalks. In so doing, the Court was able to conclude: "The State contributes no money to the schools. It does not support them. Its legislation, as applied, does no more than provide a general program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools." *Id.* at 18. Although we need not embrace in full the logic articulated in that opinion, we are controlled in this area by the holding expressed therein.

The U. S. Supreme Court has, since *Everson,* articulated a three-pronged analysis for determining whether legislative action is violative of the first amendment's establishment clause. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen,* 392 U.S. 236, 243 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.' " *Lemon v. Kurtzman,* 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). See, *State ex rel. Rogers v. Swanson,* 192 Neb. 125, 219 N.W.2d 726 (1974).

Section 79-487 does indeed have a secular legislative purpose, that being "to extend the health and safety benefits of school bus transportation to children who attend nonpublic schools." Statement of

Purpose, Committee on Education, L.B. 522, 1975 Leg., 1st Sess. (March 17, 1975). Furthermore, the section's primary effect is to provide safe transportation to nonprofit private school children, which neither inhibits nor advances religion. Finally, the only interaction between religion and the government, other than the actual busing of the students, involves the furnishing to the local school board by the governing body of the private school of the names, addresses, and days of school attendance of those private school students desiring transportation on the public school's buses. This minimal interaction between government and religion does not rise to the level of "excessive government entanglement" envisioned by the final part of the three-pronged analysis set forth above.

The appellant attempts to distinguish *Everson* on the basis that the transportation benefits enjoyed by the students therein were equally enjoyed by public and private school students alike, whereas in the present case the transportation benefits enjoyed by the private school students are potentially greater than those enjoyed by the public school students. See, *Ams. United for Separation of Ch. & St. v. Benton,* 413 F. Supp. 955 (S.D. Iowa 1975); *Members of Jamestown Sch. Com. v. Schmidt,* 427 F. Supp. 1338 (D. R.I. 1977). However, in light of our determination that the intent of § 79-487 is that private school students should receive *only* those services provided to public school students, such a distinction does not exist, and those cases cited in support of the proposition are inapplicable.

Therefore, we conclude that § 79-487 is not violative of those constitutional provisions raised by the parties herein. The section does not involve an appropriation to a nonpublic institution in violation of article VII, § 11, nor is it "special legislation" in violation of article III, § 18. The appellant is without standing to raise an equal protection claim un-

der § 1 of the fourteenth amendment, based upon the profit-nonprofit distinction drawn in the statute. Finally, the provisions of the statute are not an establishment of religion in violation of the first amendment. We affirm the District Court's determination that the statute does not violate any provision of the U. S. or Nebraska Constitutions.

AFFIRMED.

CAPORALE, J., dissenting.

I respectfully dissent on the ground that in its present posture this appeal presents no case or controversy which requires judicial action.

The majority concedes the matter is moot, but justifies rendering an advisory opinion on the ground that the subject is one of public interest. I recognize there is some precedent for such a position, but question the applicability of that precedent to the matter at hand. *Meyer v. Colin,* 204 Neb. 96, 281 N.W.2d 737 (1979), recognized the general rule to be that appellate courts do not sit to give opinions in cases or controversies which have become moot and that an appeal will be dismissed where no actual controversy still exists between the parties at the time of hearing. It concluded, however, that the general rule does not apply to appeals involving matters of public interest. Yet, earlier this year we dismissed on the ground of mootness the case of *Ellis v. County of Scotts Bluff,* 210 Neb. 495, 315 N.W.2d 451 (1982), which presented an issue as to the power of county boards of commissioners over the budgets of elected officials. *Meyer* involved an ongoing budgetary practice and had become moot because the budget year in question had expired and the plaintiff was no longer the assessor. In *Ellis* there was no showing that the practice complained of would be repeated, nor was there any judicially enforceable remedy which might have been applied. Notwithstanding those distinctions between *Meyer* and *Ellis,* the latter case instructs us that the pres-

ence of a public interest standing alone is not enough to warrant an advisory opinion. The earlier case of *Braesch v. DePasquale,* 200 Neb. 726, 265 N.W.2d 842 (1978), *cert. denied* 439 U.S. 1068, 99 S. Ct. 836, 59 L. Ed. 2d 34 (1979), taught the same lesson. *Braesch* decided the enforceability of certain rules governing the conduct of participants in interscholastic athletics notwithstanding the fact the plaintiffs had graduated from school. It did so because almost no case involving disciplinary action in the field of interscholastic competition could reach us before it became moot.

That rationale does not apply to this matter. We are not yet so far behind in our docket that a proper case involving an actual controversy between parties each of whom has a stake in the outcome can not be presented to us.

The practice of rendering advisory opinions whenever we choose to declare the existence of a public interest constitutes an unwarranted intrusion by the judiciary in the affairs of society, confuses the bar as to when such opinions may be sought, confounds litigants, and contributes to the very docket congestion we all seek to avoid.

I would dismiss on the ground of mootness and vacate the judgment of the District Court.