BRIAN BRAESCH, A MINOR, BY DELBERT BRAESCH, HIS FATHER AND NEXT FRIEND, ET AL., APPELLEES, V. DANIEL DEPASQUALE ET AL., APPELLANTS.

265 N. W. 2d 842

Filed May 3, 1978. No. 41380.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman & Thomsen, for appellants.

Clayton H. Shrout of Shrout, Christian, Krieger, Merwald & Mori, and Verne Moore, Jr., of Moore, Moore & Peters, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

McCOWN, J.

The plaintiffs brought this proceeding in the District Court for Washington County, Nebraska, to enjoin the defendant school officials from enforcing any rules of conduct that would prevent full participation by the plaintiffs in the interscholastic basketball program of the Arlington Public Schools. The District Court granted a permanent injunction enjoining defendants from preventing plaintiffs from full participation in the interscholastic basketball teams of Arlington, Nebraska. The defendants have appealed.

The plaintiffs in this action were all minors under the age of 19 and represented by their respective parents. All five plaintiffs were senior members of either the boys or the girls interscholastic basketball teams of Arlington High School. Rules of conduct for boys and girls basketball teams were distributed at the beginning of the 1976-77 basketball season. Participants in the basketball program were required to sign them and obtain one parent's signature on a copy of the rules. The rule involved here was: "DRINKING, SMOKING OR DRUGS: Do not come out for basketball if you plan on using any of the above. Any use of them will result in the immediate expulsion from the squad." Each of the plaintiffs and one or more of their parents had signed the rule.

On Saturday evening, January 8, 1977, a party was held at the home of one of the plaintiffs. The other plaintiffs, along with other seniors who were not members of the interscholastic basketball teams, attended the party. A few days later, Robert Krempke, the coach of the boys basketball team, overheard conversations at school about the party and learned that a senior boy not on the basketball team had been arrested on the evening of the party on a charge of minor in possession. On January 12, 1977, the coach approached the plaintiff who had been the host for the party and questioned him about the party. The plaintiff host admitted that there had been beer at the party and that he and other members of the basketball team were "involved." After consulting with the school principal, the basketball coach talked with each of the plaintiff members of the boys basketball team. Each admitted being at the party and drinking. The coach told them to leave basketball practice, and told them that he would arrange a meeting with them and their parents, and the principal, the following morning. The following morning, January 13, 1977, Daniel DePasquale, the principal of the high school, and Mr. Krempke, the coach, met with two of the boys involved, and on the next morning with the third. Each boy was accompanied by a parent or adult member of his family. At these brief meetings the coach told the persons present that the rules required expulsion from the basketball team, and the principal supported the coach. The principal testified that at the conclusion of these meetings he considered the boys suspended from the team and told them the decision would be confirmed by mail.

On January 13, 1977, Eloise Hiemke, the girls basketball coach learned about the drinking party from one of the girls involved and from an assistant coach. On the morning of January 14, 1977, the girls coach met with the two girls involved, asked each of

them if they had been at the party, and if they had had any alcoholic beverages to drink. Each of the girls admitted she had. The principal and the girls basketball coach met with the girls and their parents on the afternoon of January 14, 1977. The principal and the girls coach advised the girls and their parents that they felt the girls should be expelled from the team, and that an official letter would be mailed to them advising them of the decision and telling them what could be done to appeal the decision. The principal opinion expressed by the parents at the various meetings was that the penalty was too severe.

By letter dated January 18, 1977, the principal notified all the plaintiffs and their parents that each of the plaintiffs had been suspended from the basketball team until January 31, 1977, and then expelled from the team for the remainder of the season. The letter also informed them that they had 5 days in which to give written notice of their desire to appeal to the board of education, and that at the hearing they would each have the right to present their side of the issue, present any documents or statements, and cross-examine witnesses and be represented by counsel. By letters dated January 20, 1977, each of the plaintiffs requested a hearing.

On January 21, 1977, the plaintiffs filed this action in the District Court for Washington County, and obtained a temporary order restraining the defendant school officials from enforcing any rules that would prevent full participation by the plaintiffs in the interscholastic basketball program. Hearing on a temporary injunction was set for January 28, 1977.

On January 24, 1977, the plaintiffs were advised by the principal that they were entitled to a hearing before a hearing examiner. The hearing examiner advised the plaintiffs that hearing would be held at 4:30 p.m., on January 26, 1977, at the school. The

plaintiffs declined to participate in the appeals procedures established by the school board.

On January 28, 1977, following a hearing, the District Court granted a temporary injunction enjoining the defendants from preventing the plaintiffs from full participation on the interscholastic basketball teams. Trial on the permanent injunction was later set for and held on February 18, 1977. Following the hearing, the court specifically found that the right to participate in interscholastic basketball activities was "a constitutional right protected by the due process clause of the state and federal constitutions" and that plaintiffs had been deprived of that right without due process. The District Court entered a permanent injunction enjoining defendants from preventing plaintiffs' full participation in the interscholastic basketball teams of Arlington High School. The defendants have appealed.

The plaintiffs filed a motion to dismiss the appeal in this court on the ground that the matter is moot. All the plaintiffs have now been graduated from high school. It is contended that the judgment in this court will, therefore, have no practical effect as to them, and there is no ground for appellate review. The defendants contend that although the issues may be moot as to the particular plaintiffs here, the case nevertheless involves matters of public interest which affect all schools in the state that maintain programs of interscholastic athletics.

Some cases hold that in a case which has become moot, an appeal will not be retained merely for determining the question of costs. As a general rule, appellate courts do not sit to give opinions on moot questions on abstract propositions, and an appeal will ordinarily be dismissed where no actual controversy exists between parties at the time of the hearing. In State ex rel. Coulter v. McFarland, 166 Neb. 242, 88 N. W. 2d 892, this court recognized that general rule but said: "This general rule, however, is

subject to some exceptions, as where the question involved is a matter of public interest; * * *." The court then held that the questions involved in that case presented matters of public interest because they affected all county courts of the state. The questions involved in the case now before us also present matters of public interest. In the context of disciplinary action in the field of interscholastic athletic competition, almost no case could reach this court for decision before it became moot if we refused to decide all cases where no actual controversy still exists between the parties at the time of appellate hearing and decision. The motion to dismiss is not well taken.

There is some disagreement between the parties as to whether participation in high school athletics is a constitutional right or is a privilege not protected by any constitutional principle. Since Graham v. Richardson, 403 U. S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534, the Supreme Court of the United States has abandoned much of the former dichotomy between rights and privileges in constitutional classifications. The Fourteenth Amendment's protection of property extends to benefits which, under state law or practice, a person has a claim or entitlement. Board of Regents v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548. The Supreme Court of the United States has also held that temporary suspension from public school infringes upon property or liberty interests protected by the due process clause of the Fourteenth Amendment. Goss v. Lopez, 419 U. S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725.

The State of Nebraska, as a part of its program for public education, has provided athletic opportunities to all public school students. Participation in interscholastic athletics ordinarily has significantly less important constitutional dimensions than does participation in traditional academic education. A student's interest in participation in high school ath-

letics is nevertheless a significant one. Brenden v. Independent School Dist., 477 F. 2d 1292 (8th Cir., 1973). In the light of these constitutional principles, the question is whether the due process clause limits the power of the defendants to exclude the plaintiffs from participation in the interscholastic athletic program of Arlington High School.

Assuming that the application of the rule of conduct involved here implicates a property or liberty interest which is protected by the Fourteenth Amendment, the question becomes one of what process was due the plaintiffs under the circumstances of this case. Due process is not a technical fixed concept to be applied in all conditions, but must be flexible. It calls for such procedural protection as may be appropriate to meet the particular situation. In Goss v. Lopez, *supra*, the Supreme Court held that due process requires that a student facing temporary *academic* suspension for disciplinary reasons be given oral or written notice of the charges against him, and, if he denies them, an explanation of the evidence the authorities have and an opportunity to explain his side of the story. The Supreme Court required those rudimental precautions against unfair or mistaken findings and arbitrary exclusion from school. Certainly no greater requirements should be imposed for expulsion from interscholastic athletics.

There can be no doubt that each of the plaintiffs here had specific advance notice of the rule of conduct involved, and notice of the date, time, and place of the violation charged. Each of the plaintiffs admitted his or her violation of the rule. Courts that have considered the issue have generally concluded that when the acts which are the basis for disciplinary action are admitted, the requirements of due process are far less stringent, and that due process requirements with respect to the "guilt" finding process have been met by the admissions. See,

Betts v. Board of Educ. of the City of Chicago, 466 F. 2d 629 (7th Cir., 1972); Ector County Independent School Dist. v. Hopkins, 518 S. W. 2d 576 (Tex. Civ. App., 1974). In the latter case the court said: "With regard to what process is due, where students admit the misconduct with which they are charged, the function of procedural protections in insuring a fair and reliable determination of the issue of 'guilt' is not essential."

In the case before us the plaintiffs do not dispute that there was a specific rule of conduct for interscholastic basketball participants; that each of them and their parents had actual notice of the rule in advance; and that each of the plaintiffs violated the rule. The plaintiffs' position is simply that the rule was arbitrary and unreasonable or that the penalty was too great.

Rules prohibiting use of alcoholic liquor or drugs by participants in interscholastic athletics are clearly appropriate. In Richardson v. Braham, 125 Neb. 142, 249 N. W. 557, this court upheld the right of public schools to make reasonable rules for student conduct, and held that in order to overturn such rules on the ground that they were unreasonable or arbitrary, or that they invade private rights, the evidence of such facts must be clear and satisfactory. This court said: "The wisdom or expediency of a rule adopted by a school board and the motive prompting it are not open to judicial inquiry, where it is within the administrative power of that body." Rules governing the conduct of participants in interscholastic athletics duly and regularly adopted by school authorities ought to be valid and enforceable unless they are clearly arbitrary and unreasonable and serve no legitimate end of educational athletic policy.

The rule involved in this case, even though the penalty of expulsion for the season might be deemed severe by some persons, clearly serves a legitimate

rational interest and directly affects the discipline of student athletes. It cannot be said that the prescribed penalty was an arbitrary and unreasonable means to attain the legitimate end of deterrence of the use of alcoholic liquor by student athletes. See, Bunger v. Iowa High School Athletic Assn., 197 N. W. 2d 555 (Iowa); Annotation, 53 A. L. R. 3d 1110 at p. 1124.

Although due process may also contemplate an opportunity to be heard on the question of the penalty to be imposed where the penalty is discretionary rather than prescribed, that opportunity was also provided here. In addition to the informal procedures and meetings, which met all rudimentary requirements of due process, the plaintiffs here were also given the right to appear at a formal hearing with a right to present evidence, cross-examine witnesses, and be represented by counsel. A hearing examiner was appointed and a date set for hearing but the plaintiffs declined to participate in any of the appeals procedures established by the school board. Instead, they commenced this injunction action 1 day after they had requested the appeals procedures offered by defendants, and the temporary injunction was obtained in the District Court 2 days after the date set for the school hearing which plaintiffs had already refused. Under such circumstances courts should be reluctant to interfere prior to completion of prompt and reasonable procedures for obtaining a final order of the school board. A few days suspension from interscholastic athletic competition can hardly be said to constitute such irreparable harm as to justify judicial interference with orderly and prompt school board procedures.

While school boards are not subject to the Administrative Procedures Act, the rules broadly applying to judicial review of the action of administrative agencies are, or should be, equally applicable here. It is the general rule that administrative action

which is not final cannot be attacked in an injunction proceeding, the reason being that in the absence of a final order or decision, power has not been fully and finally exercised and there can usually be no irreparable harm. See 2 Am. Jur. 2d, Administrative Law, § 583, p. 411. On the evidence in this case, a few days delay could not constitute irreparable harm in a constitutional sense or otherwise.

It is clear in this case that the school board had the power to change or reduce the penalty if it were determined to be arbitrary and unreasonable. The plaintiffs' refused to exhaust that remedy or to pursue it to the point of finality at which it might be ripe for judicial review. Where a board of education has provided effective, reasonable, and prompt procedures for notice, hearing, and review of an order of expulsion from participation in interscholastic athletics, and the athlete neglects or refuses to follow or comply with such procedures and exhaust such remedies, such neglect or refusal ordinarily constitutes a waiver of any right to subsequent injunctive relief.

The action of the District Court in granting the injunction here was erroneous and is therefore reversed.

REVERSED.