CLAY FRENCH, A MINOR BY AND THROUGH HIS FATHER AND NEXT FRIEND, ROBERT FRENCH, APPELLANT, V. RONALD CORNWELL, APPELLEE.

276 N. W. 2d 216

Filed March 13, 1979.  No. 41864.

Hurt & Gallant, for appellant.

Ray C. Simmons, for appellee.

Heard before SPENCER, Retired Justice, McCOWN, and BRODKEY, JJ., and BLUE and REAGAN, District Judges.

BLUE, District Judge.

Plaintiff, Clay French, a minor by and through his father and next friend, Robert French, brought this action for special damages of $701.66 for legal services and for general damages against Ronald Cornwell, assistant principal and activities director of West Point Junior-Senior High School.

Plaintiff, Clay French, who was then 15 years of age, was arrested on New Year's Day, January 1, 1977, in West Point, Nebraska, and charged with intoxication. On January 2, 1977, the plaintiff's father advised the wrestling coach of the West Point school of the arrest. The coach brought the matter to the attention of the defendant, Ronald Cornwell, who, along with his other duties, was responsible for administering the athletic program for the school. At a meeting in the defendant's office on January 3, 1977, according to the affidavits for defendant, the plaintiff admitted he had been arrested and that he had been drinking alcoholic beverages on January 1, 1977. The plaintiff was orally suspended by defendant from participating in wrestling matches for 6 weeks, but not from wrestling practice. Clay French and his father were both present when the suspension was announced. The following day the parents were mailed a notice of the suspension.

This suspension was in accordance with the policy

of the West Point board of education, as recited by the superintendent of schools in his affidavit: "* * * provided that if an athlete of the West Point High School was convicted in a court of law of drinking alcoholic liquors, or was seen drinking by a coach, or he admitted to drinking, then this athlete would lose six weeks of competition in the sport in which he was competing at the time of such liquor incident."

The plaintiff on January 20, 1977, in the juvenile court of Cuming County, Nebraska, admitted he was intoxicated on January 1, 1977, and was placed on probation for a period of 30 days.

The 6-week suspension from wrestling meets lasted only 2 weeks because of a temporary restraining order entered by the District Court. At the request of plaintiff and his parents for a further hearing, the superintendent of schools appointed the principal of the North Bend, Nebraska, high school as a special hearing officer. A further hearing was held and the examiner upheld the 6-week suspension.

The superintendent of schools on January 27, 1977, reduced the original penalty of 6 weeks to 2 weeks, which was the suspension period already served.

The plaintiff alleged in his petition that his suspension by defendant was unlawful and in violation of his rights because it was without due process of law; that the defendant had no authority to suspend plaintiff; and that the suspension violated "LB 503."

A student has a significant interest in participation in interscholastic athletics which may be the subject of Fourteenth Amendment protections. Braesch v. DePasquale, 200 Neb. 726, 265 N. W. 2d 842 (1978). The question in this case, as in Braesch, is what process was due plaintiff under the circumstances?

While participation in interscholastic athletics ordinarily has significantly less important constitutional dimensions than does participation in traditional academic education, it is nevertheless a significant one. Brenden v. Independent School Dis-

trict 742, 477 F. 2d 1292 (8th Cir., 1973).

The Supreme Court in Goss v. Lopez, 419 U. S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725, held a student facing temporary *academic* suspension must be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence against him, and an opportunity to present his side of the story. It would seem that the rudimental requirements of Goss v. Lopez, *supra,* would certainly be more than sufficient, in this case, when the suspension is only from 6 weeks of athletic competition.

In the case before us there can be no doubt that Clay French and his parents were aware of the rule of the West Point school system. In fact, plaintiff's father was a member of the school board and voted for the adoption of the rule. Also, there is no doubt that Clay French admitted violation of the rule. Generally, courts have concluded that when the acts which are the basis for disciplinary action are admitted, the requirements of due process are far less stringent, and that due process requirements with respect to the "guilt" finding process have been met by the admissions. See Betts v. Board of Education of City of Chicago, 466 F. 2d 629 (7th Cir., 1972), and Braesch v. DePasquale, *supra.*

Under the circumstances, we feel that the procedures in connection with plaintiff's suspension by defendant were appropriate and did not violate due process requirements. It is agreed that unfair suspensions must be protected against; however, the courts should refrain from imposing such a burdensome set of requirements on the school administration that compliance would become too costly and time consuming. The result would be a loss of the effectiveness of a regular disciplinary tool and would result in overwhelming administrative procedures.

The plaintiff contends that there was no compliance with sections 79-4,170 through 79-4,205, R. R. S.

1943. (Student Suspension or Expulsion.) Without analyzing all of the above sections in this opinion, we note that section 79-4,179 defines "long-term suspension" as expulsion of a student *from attendance in all schools* within the system for a period exceeding 5 school days but less than 20 school days. Since plaintiff was suspended only from wrestling meets for 6 weeks, the provisions of this act are not applicable.

The defendant contends he is immune from liability under the facts of this case.

The leading case in this area is Wood v. Strickland, 420 U. S. 308, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975), where several students who were suspended from school sued school officials under the Federal Civil Rights Act. The Supreme Court in 95 S. Ct., at p. 999, 1000 stated: "Liability for damages for every action which is found subsequently to have been violative of a student's constitutional rights and to have caused compensable injury would unfairly impose upon the school decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. School board members, among other duties, must judge whether there have been violations of school regulations and, if so, the appropriate sanctions for the violations. Denying any measure of immunity in these circumstances 'would contribute not to principled and fearless decision-making but to intimidation.' Pierson v. Ray, *supra,* 386 U. S., at 554, 87 S. Ct., at 1218. The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and the students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon

their private resources from monetary liability were a likely prospect during their tenure.''

At 95 S. Ct. 1001 it is stated: ''A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.''

It is stated at 79 C. J. S., Schools and School Districts, § 503, p. 451: ''As a general rule a teacher and the members of a school board in exercising the power of expelling or suspending a pupil must exercise judgment and discretion, and are not liable in damages for errors of judgment in that respect if they act without malice, wantonness, or intention to wrong the pupil.''

It is stated at 68 Am. Jur. 2d, Schools, § 268, p. 592: ''The gist of an action for wrongful expulsion or suspension is malice; therefore, there can be no recovery where the expulsion or suspension is the result of an error of judgment by the school authorities, and where they act without malice, in good faith, and in the line of what they honestly believe to be their duty.''

In the instant case there is no allegation or proof of any intent or conduct on the part of defendant that would deprive him of the immunity referred to in Wood. He was clearly acting within his privilege as a school official.

Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. In this respect the court should take that view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. If, when so viewed, reasonable men might reach different conclusions,

the motion should be denied and the case tried on its merits. Farro v. Rubottom, *ante* p. 120, 274 N. W. 2d 149 (1979). As we said in Pfeifer v. Pfeifer, 195 Neb. 369, 238 N. W. 2d 451 (1976): "The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity and expense and delay of trial, those cases where there is no genuine claim or defense. Properly used it can accomplish that purpose."

Upon viewing the facts most favorable to the plaintiff, we conclude that the defendant's motion for summary judgment was properly granted and the motion for new trial was properly overruled. The judgment of the District Court is affirmed.

AFFIRMED.