IN RE INTEREST OF J.K.B. AND C.R.B., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. D.R.B., APPELLANT.
414 N.W.2d 266

Filed October 23, 1987.   No. 86-981.

Stephen A. Scherr of Whelan, Foote & Scherr, P.C., for appellant.

Ted S. Griess, Clay County Attorney, and Jay J. Sullivan, guardian ad litem, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Forty-one-year-old D.R.B. appeals from the judgment of the Clay County Court (sitting as a juvenile court) terminating his parental rights in and to his 9-year-old daughter, C.R.B., and 8-year-old son, J.K.B. The parental rights of the children's mother were also terminated, but she has not appealed. We are thus concerned only with the rights of the father, who argues the county court erred by (1) improperly receiving certain evidence, (2) failing to appoint counsel, and (3) concluding that the evidence clearly and convincingly establishes grounds for terminating his parental rights. We affirm.

This matter has been pending since July 13, 1982, when petitions were filed alleging the children were within the purview of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1984), and thus within the jurisdiction of the juvenile court. Specifically, the petitions alleged that the parents neglected or refused to provide for the children's "proper or necessary subsistence, or other care necessary for the health, morals, or well-being." Section 43-247 then provided, as it does presently, that the juvenile court have

exclusive original jurisdiction as to . . . (3) Any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; . . . who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence,

education, or other care necessary for the health, morals, or well-being of such juvenile . . . .

The family had been called to the State's attention 2 days earlier, when it was alleged the father had broken the arm of one of the mother's other children. Although the father now denies having broken the child's arm, he nonetheless pled guilty to the criminal charge arising from the incident. Nearly 4 years later, the State filed a motion to terminate the father's parental rights, alleging that "reasonable efforts under the direction of the Court have failed to correct the conditions" leading to the determination that the children were within the purview of § 43-247(3)(a).

Neb. Rev. Stat. § 43-292 (Reissue 1984) provided at the relevant time, as it does now:

The court may terminate all parental rights between the parents . . . and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that . . .

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

In connection with his first assignment of error, the father asserts the county court improperly admitted "into evidence in a termination proceeding all documents placed in the court file for adjudication, disposition and review proceedings."

The documents in question consist of a variety of reports from therapists, social workers, and sundry functionaries. The father objected on the ground, among others, that the reports constituted inadmissible hearsay. Since the reports would have no relevance were they offered for any purpose other than to prove the truth of the matters asserted in them, the reports were indeed hearsay. Neb. Rev. Stat. § 27-801 (Reissue 1985); *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986). The record tells us that the father, through counsel, stipulated at one review hearing that certain reports could be admitted if the allegations against him were changed to allege neglect rather than abuse.

Leaving aside that, so far as we can tell, neglect is all that was ever alleged, the state of the record is such that we cannot determine with certainty what records the stipulation encompassed. Further, there is no verbatim record as to the circumstances under which the myriad other reports were received in the various hearings which preceded the termination proceeding; thus, we cannot determine whether the father had an opportunity to cross-examine the authors of the reports at the time they were received in evidence. While the rules of evidence do not apply at a dispositional hearing, Neb. Rev. Stat. § 43-283 (Reissue 1984), a proceeding to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process, *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), at which parents are entitled to cross-examine adverse witnesses, *In re Interest of R.A., ante* p. 160, 410 N.W.2d 110 (1987).

While a court must take judicial notice of its own records in the case under consideration, and has the right to examine its own records and take judicial notice of its own proceedings and judgment in an interwoven and dependent controversy where the same matters have already been considered and determined, *In re Interest of R.A., supra*, and *State v. Norwood*, 203 Neb. 201, 277 N.W.2d 709 (1979), a juvenile court may not, at a proceeding to terminate parental rights, take judicial notice of facts or opinions other than as provided in the rules of evidence. *Jorgensen v. Jorgensen*, 194 Neb. 271, 231 N.W.2d 360 (1975), an action to modify the custody provisions of a divorce decree, holds that due process requires that witnesses be subject to cross-examination. The *Jorgensen* court observed that ex parte statements are too unreliable to be considered in the investigation of controverted facts, and ruled that where an investigative report may form the basis for the conclusions or judgment entered, the trial court must submit the report to the parties and permit them to call the person making the report to testify. *In re Interest of D.*, 209 Neb. 529, 308 N.W.2d 729 (1981), found letters written to the court by various welfare agencies and received in evidence without objection nonetheless failed to clearly and convincingly establish the need to

terminate parental rights. In the course of its opinion the *D.* court observed that the termination of parental rights is far too important a matter to be done by informal procedures, and encouraged the use of more formal court procedures. Something more than encouragement being needed, we now hold that in proceedings to terminate parental rights, reports may not be received in evidence for the purpose of that proceeding, nor otherwise relied upon by the court, unless they have been admitted without objection or brought within the provisions of Neb. Rev. Stat. § 27-803(22) (Reissue 1985), which excludes from the hearsay rule:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Thus, there is merit in the father's first assignment of error; however, merely determining that there was error in this regard does not, in and of itself, entitle the father to relief on his appeal, for error without prejudice forms no basis for appellate relief. See, *Poppe v. Petersen*, 221 Neb. 877, 381 N.W.2d 534 (1986); *Emery v. Mangiameli*, 218 Neb. 740, 359 N.W.2d 83 (1984). We review proceedings to terminate parental rights de novo on the record and ignore improperly admitted evidence. *In re Interest of R.A., supra.* Thus, whether the error was prejudicial depends upon whether there is evidence separate and apart from the improperly admitted reports which clearly and convincingly establishes grounds for termination of the

father's parental rights. This is a matter resolved later in this opinion by the analysis of the third and last assignment of error.

In the second assignment of error the father complains of the fact that after he discharged his appointed attorney, the court refused to appoint another.

The relevant sequence of events is that in November of 1985 the father, notwithstanding the court's warnings that these proceedings presented serious matters and that if present counsel were permitted to withdraw another might not be appointed, insisted that his appointed attorney was inadequate and wished to proceed without him. Appointed counsel was then permitted to withdraw. When the termination hearing began on July 29, 1986, the father, who had apparently been unsuccessful in his effort to retain private counsel, moved for the appointment of counsel because he was indigent. The court refused the request. Nonetheless, the previously appointed counsel appeared for and represented the father, without objection, throughout the termination hearing.

Neb. Rev. Stat. § 43-279.01 (Cum. Supp. 1986), which became effective September 6, 1985, requires that when the State alleges that a juvenile is within the purview of § 43-247(3)(a), or when termination of parental rights is sought under certain circumstances, including pursuant to the provisions of the juvenile code, and the parents appear without counsel, the court shall inform them of the right to counsel "of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer." This does not mean, however, that an indigent parent has the right to be represented by counsel of his or her own choosing or that the mere distrust of, or dissatisfaction with, appointed counsel is enough to secure the appointment of substitute counsel. Even a criminal defendant does not enjoy such rights. *State v. Hoffman*, 224 Neb. 830, 401 N.W.2d 683 (1987).

Moreover, the record in this case shows the father was represented in an effective fashion during the termination proceedings by volunteer counsel who had represented him by appointment in the past and was familiar with the case. There is no merit to this assignment of error.

Lastly, the father urges, in connection with the third

assignment of error, that the evidence fails to clearly and convincingly establish, as the county court found, that reasonable efforts under the court's direction failed to correct the conditions leading the court to assert its jurisdiction in the first instance.

The properly admissible evidence establishes that the county court's various rehabilitation plans required that, among other things, the father maintain employment and suitable housing, attend parenting classes, and participate in a homemaking program.

The properly admitted evidence clearly and convincingly establishes that the father maintained only sporadic employment, failed to regularly attend various parent counseling sessions, refused to follow homemaking directions or other directions with which he disagreed, would not prepare monthly budgets, and maintained unstable living arrangements which were inadequate to receive the children (at one point he lived in his truck for a 3-day period).

Moreover, the admissible evidence shows the father, himself the product of an alcoholic and violent home, has a long history of alcohol abuse and of abusing his female companions and wives (he has had four marriages). He is in arrears on the child support he is obligated to pay for his other four children and has paid only minimal support for the children who are the subject of this action. He has an antisocial personality, dresses in female clothing in public, is hostile, and from time to time has threatened the social workers assigned to the case. Even the psychologist called as a witness on the father's behalf testified that the father's inability to control his temper when frustrated presented a threat of harm to the children. The admissible evidence further clearly and convincingly establishes that the children demonstrated negative behavior after visits with their father. Notwithstanding these problems, the father does not recognize he needs help.

We conclude from our review, having given weight to the fact that the county judge observed the witnesses and judged their credibility, that the evidence clearly and convincingly establishes that the rehabilitation plan ordered by the county court was a reasonable one, that the father has not substantially

complied with it, that the prognosis for rehabilitation is poor, and that it is in the children's best interests that the father's parental rights be terminated without further delay. Thus, grounds for terminating the father's parental rights exist under the provisions of § 43-292(6), as found by the county court. *In re Interest of T.C., ante* p. 116, 409 N.W.2d 607 (1986); *In re Interest of L.H.*, 225 Neb. 706, 407 N.W.2d 784 (1987).

AFFIRMED.

BOSLAUGH, J., concurring.

I concur in the judgment of the court but disagree with the statement that a juvenile court at a proceeding to terminate parental rights may not take judicial notice of facts or opinions other than as provided in the rules of evidence.

*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), was concerned with the standard of proof required in termination proceedings and the necessity that the proceedings satisfy the requirements of fundamental fairness.

The U.S. Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), stated:

" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U. S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

See, also, *Braesch v. DePasquale*, 200 Neb. 726, 265 N.W.2d 842 (1978).

In *Santosky v. Kramer, supra*, the Court held that in a proceeding to terminate parental rights, the process due is determined by the balancing of three factors: the private interests affected by the proceeding; the risk of error created by the state's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. In balancing these interests, I believe that due process is satisfied by use of a standard less drastic than requiring the application of the rules of evidence to materials that the juvenile court may judicially notice. The juvenile court should be able to take judicial notice of reports and other

materials received at earlier hearings and relevant in reaching a decision as to the proper disposition of the case, provided that the author of such reports or materials is available and can be subpoenaed as a witness and made available for examination by either party or the court. This procedure should be sufficient to satisfy all constitutional confrontation and due process of law requirements, provided that the reports or materials are available to the interested parties sufficiently in advance of the termination hearing so as to allow the parties to compel the attendance of the persons who wrote or prepared the materials. See *People in Interest of A. M. D.*, 648 P.2d 625 (Colo. 1982).

Similarly, the court in *Matter of J.R.B.*, 715 P.2d 1170 (Alaska 1986), found that while *Santosky* held that a termination of parental rights interferes with a fundamental liberty interest of the parent, "the discretionary use of hearsay in the dispositive phase of such proceedings, subject to review for abuse of discretion, is consistent with fundamental fairness." 715 P.2d at 1174. (Citing *Stein v. New York*, 346 U.S. 156, 73 S. Ct. 1077, 97 L. Ed. 1522 (1953) "(hearsay evidence rule, with all its subtleties, anomalies, and ramifications, will not be read into the fourteenth amendment)." 715 P.2d at 1174.)

A termination of parental rights hearing is the culmination of months and sometimes years of juvenile court involvement with the parties. To restrict the court's access to its own records and materials of the prior proceedings is to require the court to rehear the evidence received at those prior hearings again. This, I believe, goes too far.

Within the guidelines of notice and opportunity for cross-examination that have been set forth above, the taking of judicial notice by the juvenile court of prior reports and materials should satisfy the fundamental fairness requirements of *Santosky*.