IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF TRITON B. & HAZELYNN B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TRITON B. AND HAZELYNN B., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CASEY C., APPELLANT, AND HUNTER B., APPELLEE AND CROSS-APPELLANT.

Filed December 3, 2024.    Nos. A-24-256, A-24-257.

Appeals from the County Court for Lincoln County: TANYA K. ROBERTS-CONNICK, Judge. Affirmed.

Margaret R. Jackson for appellant.

Rebecca Harling, Lincoln County Attorney, for appellee State of Nebraska.

Claire K. Bazata, of Berreckman & Bazata, P.C., L.L.O., for appellee and cross-appellant Hunter B.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Casey C. appeals, and Hunter B. cross-appeals, from orders of the Lincoln County Court sitting as a juvenile court, terminating their parental rights to their two minor children. Casey filed a notice of appeal in each child's respective case and the appeals have been consolidated for purposes of appellate review. Upon our de novo review, we affirm the juvenile court's orders.

- 1 -

## II. BACKGROUND

Casey and Hunter are the biological parents of Triton B., born 2015, and Hazelynn B., born 2016. After multiple voluntary cases had been opened with both the Colorado Department of Human Services (DHS) and the Nebraska Department of Health and Human Services (DHHS), on March 30, 2022, the State filed separate juvenile petitions to adjudicate Triton and Hazelynn pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), based on the actions of both parents. The supporting affidavit for the petitions recounted a concerning event that occurred in Colorado in August 2013, which resulted in the removal of Casey's two older children from her care, and included subsequent incidents in both Colorado and Nebraska involving Triton and Hazelynn. These events caused Nebraska DHHS to become involved with the family. This affidavit also provided grounds for the State's contemporaneous filing of a temporary custody order and the removal of Triton and Hazelynn from Casey and Hunter's home. One month after their removal, a protective custody hearing was held, and the court ordered the children to remain in out-of-home placement. For clarification, this appeal involves only Triton and Hazelynn.

On July 1, 2022, Casey and Hunter entered no contest admissions to the petitions. The State had agreed with the parents that, in return for entering no contest admissions, it would recommend a permanency objective of reunification and not seek termination of parental rights at that time. During this hearing, the juvenile court received the supporting affidavit as an exhibit. The court then adjudicated both children and a joint case plan was ordered.

The original case plan was submitted with the permanency goal of reunification, and it set goals necessary to achieve this, including: Casey and Hunter would (1) address any drug use they may have, (2) address their mental health needs, and (3) work on parenting skills and supervision. After a series of hearings held by the juvenile court, a permanency and disposition hearing was held where the parties modified the case plan to include a stipulated concurrent permanency goal of reunification and adoption.

On August 7, 2023, the State filed a petition for termination of parental rights, seeking termination under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016).

The juvenile court held a termination hearing in early December 2023. The intake caseworker from Colorado, Rebeckah DeAngelis, testified regarding her investigation into the care of Triton and Hazelynn beginning in 2020, which included a review of the family's long history with DHS. The parents' drug and alcohol evaluators, the children's psychologist, the family support worker, the visitation supervisor, Casey's physician, the foster parent, the parties, and Hunter's father testified over the course of the 4-day trial.

The State introduced evidence regarding Casey and Hunter's failure to meet the goals set by the case plan. Clinical psychologist, Dr. John Meidlinger, testified that he had performed evaluations for the parents and had identified serious issues with their mental health and parenting skills. He stated that he recommended various forms of therapy for both parents' treatment. The court also heard evidence that the children had suffered sexual, physical, and emotional abuse, and Meidlinger explained that his therapeutic recommendations for the parents were aimed at helping the parents develop skills to be able to aid their children with the effects of this trauma. However, both Casey and Hunter later testified and confirmed they had not participated in these recommended therapies.

The Nebraska DHHS caseworker assigned to the family, Elizabeth Kurz, testified that the case plan goals had remained the same throughout the case and that neither parent had achieved them. Specifically, she testified that the parents had frequently tested positive for drugs and alcohol throughout the case despite a requirement that they be sober, and that the parents' relationship still had unaddressed domestic violence issues despite the issue needing to be addressed before their children would be returned to their custody. Kurz ultimately testified that she believed it was in Triton and Hazelynn's best interests to terminate Casey and Hunter's parental rights. Further pertinent facts are discussed in our analysis below.

The juvenile court agreed and ultimately ordered Casey and Hunter's parental rights to be terminated, finding that all four subsections of § 43-292 as alleged had been met and that termination was in the children's best interests. Casey appeals and Hunter cross-appeals the juvenile court's decision.

### III. ASSIGNMENTS OF ERROR

Casey's brief does not contain a separate "assignments of error" section stating the assigned errors apart from the arguments in her brief. The Nebraska Supreme Court has emphasized that headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2012). See *Noland v. Yost*, 315 Neb. 568, 998 N.W.2d 57 (2023). Rather, a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court. *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L., supra*. To the extent Casey's arguments coincide with Hunter's assigned errors, we will consider those arguments as support for Hunter's assigned errors, but we disregard any of Casey's arguments that are independent of Hunter's assigned errors and review her appeal for plain error only. See *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013).

On cross-appeal, Hunter assigns, restated and reordered, that the juvenile court erred by (1) admitting hearsay evidence in violation of the parents' due process rights, (2) finding the State had proven by clear and convincing evidence that statutory grounds for termination of parental rights existed under § 43-292(2), (4), and (6), and (3) finding the State had proven by clear and convincing evidence that termination of parental rights was in the children's best interests.

### IV. STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. See *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013).

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Samantha L. & Jasmine L., supra.*

## V. ANALYSIS

### 1. ADMISSION OF HEARSAY EVIDENCE

Hunter assigns that the juvenile court erred in admitting hearsay evidence. Hunter points to the State's introduction of court records and exhibits from each child's adjudication and disposition hearings, which both parents' counsel also objected to on foundational and hearsay grounds, arguing that the records contained reports that constituted hearsay evidence and were not within a qualifying exception to the hearsay rule. Their objections were overruled. Hunter also argues the juvenile court wrongly admitted the testimony of the Colorado DHS intake caseworker, DeAngelis. Trial counsel objected to DeAngelis' testimony, once again citing hearsay grounds, arguing she could not rely on reports written by other non-testifying witnesses. Lastly, during trial, the State introduced various exhibits during Kurz' testimony which contained the results of the parents' drug tests and the hair follicle drug tests performed on the children. Both parents' trial counsel objected to the introduction of the evidence on foundational and hearsay grounds and the objections were overruled. Both parents now argue on appeal that this evidence constituted hearsay and the juvenile court's admission of such evidence violated both parent's due process rights. Upon our de novo review, we reject this argument.

The Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). Rather than the formal rules of evidence, we evaluate the admission of evidence in termination of parental rights cases using a due process analysis. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of an erroneous decision given the procedures used. *In re Interest of Gabriel B., supra*. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id*. See, also, *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004).

### (a) Exhibits 20, 21, and 22

Hunter assigns that the juvenile court violated the parents' due process rights when it improperly received exhibits 20, 21, and 22 into evidence because the exhibits contained hearsay without exceptions. Exhibit 20 is a certified copy of the court file for JV22-58, Triton's underlying juvenile case. Exhibits 21 and 22 are the exhibits that had been offered in the prior proceedings of both Triton and Hazelynn.

When exhibit 20, the certified copy of the court file of Triton's case, was offered, a due process objection was made based on *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992). Counsel argued that based on that case, "judicial notice of disputed allegations has no place in hearings to terminate on parental rights." We note that in *In re Interest of L.H. et al., supra*, the State moved the court to take judicial notice of the court's own records, exhibits, and orders. On appeal, the mother assigned error to the juvenile court's taking of judicial notice of exhibits offered at a prior hearing. These exhibits included a case report, foster care case plan review, chemical

evaluation and home evaluation. The Supreme Court noted that "these exhibits were clearly hearsay" but were not properly objected to. *Id*. at 242, 487 N.W.2d at 287.

Exhibit 20, however, was a certified copy of Triton's court file and a court must take judicial notice of its own records in the case under consideration. See *In re Interest of J.K.B. & C.R.B.*, 226 Neb. 701, 414 N.W.2d 266 (1987). However, a juvenile court may not, at a proceeding to terminate parental rights, take judicial notice of facts or opinions other than as provided in the rules of evidence. *Id*. At trial, and on appeal, Hunter takes issue primarily with the court's receipt of the county attorney's affidavits in support of the juvenile petition and motion for temporary custody. The allegations of both are identical.

Although the bill of exceptions from the adjudication hearing is not included in our record, the transcript reveals that both parents entered no contest pleas to the allegations and the court found a factual basis existed to adjudicate the children under § 43-247(3)(a). The factual basis for the adjudication order was the affidavit to which Hunter now objects. The journal entry for the adjudication confirms that the court received this affidavit. Therefore, the court could properly take judicial notice of its order adjudicating the children based on the allegations of the juvenile petition and the accompanying affidavit. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003) (finding no error in juvenile court taking judicial notice of its earlier orders where mother did not dispute allegations in underlying action).

Furthermore, the juvenile court advised counsel that it recognized exhibit 20 may contain hearsay, but advised as follows:

> that gives [sic] to the weight of evidence and what weight that evidence is given. So even though it was received, it doesn't mean it's given the same weight necessarily as in-person testimony, and the Court can take that into consideration. The Court can also disregard items that it does not feel are of evidentiary value or are of low evidentiary value or not as relevant to the matter. And it is a certified copy of the court file, so I think that's different than taking just judicial notice because it's all -- it's specifically what all is contained within it, and again, the Court can decipher going through it what evidentiary value to give to what orders at what point in time.
>
> But if it is a court order that the Court has already entered, I believe that that's completely relevant, and I don't know that that's really up for a debate to the veracity of it because it's a court order. So objection noted and overruled for the record.

Based on the foregoing, we find no reversible error in the juvenile court's receipt of exhibit 20.

Regarding exhibits 21 and 22, an objection was made based on hearsay and due process. The juvenile court overruled the objections, noting that the exhibits contained documents that had been previously offered and received into evidence. It iterated that "[i]f it's hearsay that is not allowable the Court will disregard it during the Court's review of the case."

Hunter argues that despite the juvenile court's reassurance, it did erroneously rely on hearsay contained within those exhibits in its order terminating his parental rights. On page 4 of its opinion, the juvenile court specifically stated that it considered the evidence contained in exhibits 22 and 23 solely for foundational purposes for Kurz' testimony, not for the truth of the matter asserted. However, Hunter argues that "they were later used as evidence of the truth of the

matter asserted with respect to drug testing as well as other information included in these exhibits." Brief on cross-appeal at 21.

Based on *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992), we agree with Hunter that many of the exhibits contained hearsay and may not have been properly admitted. As explained in *In re Interest of L.H. et al., supra*, reports may not be received in a proceeding to terminate parental rights unless they have been admitted without objection or brought within the provisions of Neb. Rev. Stat. § 27-803(23) (Cum. Supp. 2022). However, the improper admission of evidence by the trial court in a parental rights termination proceeding does not, in and of itself, constitute reversible error; a showing of prejudice must be made. *In re Interest of L.H. et al., supra*.

Because Hunter directs us only to the juvenile court's reliance on drug testing results contained within these exhibits, we do not scour the record to determine what "other information" may have been relied upon by the court and included in these exhibits. We reject Hunter's argument that the juvenile court erroneously relied on information regarding drug testing contained in these exhibits. Hunter directs us to page 10 of the juvenile court's order which states, "The concerns that arose during the voluntary plan included: both children testing positive for THC on hair follicle tests on May 2020 and October 2020 (Exhibit # 21 page 19)." However, the court references the test results only as an explanation for why DHHS continued to intervene with the family and eventually removed the children from the home. This use of the evidence is not hearsay. See *State v. Anthony*, 316 Neb. 308, 4 N.W.3d 393 (2024) (statements are not hearsay to extent they are offered to explain course of series of events). We find no prejudicial error in the juvenile court's receipt of exhibits 21 and 22.

(b) Drug Test Results

Hunter further assigns that the parents' urinalysis and test patch results that were offered and received as exhibits were improperly admitted hearsay. Assuming, without deciding, that the court's receipt of these exhibits was erroneous, Hunter cannot show that he was prejudiced by their admission. Hunter himself testified that he had relapsed on methamphetamine, had drank alcohol, and had smoked Delta-8 throughout the time of the children's removal. Casey also testified that she had drank and smoked marijuana during the same time period. Thus, because both parents admitted to failing to maintain sobriety in accordance with the case goals, any erroneous admission of the parents' drug test results was harmless.

Hunter also assigns that the juvenile court improperly admitted testimony regarding the results of hair follicle drug tests performed on the children. The testimony pertaining to these results was only relevant to showing why Kurz made parental sobriety one of the case plan goals. Thus, the testimony was not erroneously admitted because the test results were not offered to prove the truth of the matter, but to show why Kurz took specific actions; therefore, they did not constitute hearsay. See *State v. Anthony, supra*.

(c) Other Alleged Evidentiary Errors

Within Hunter's argument pertaining to erroneously admitted hearsay, he argues the juvenile court improperly relied on exhibit 24. However, Hunter failed to assign this as error and we need not address it. See *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024)

(alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Hunter also argues that the court improperly admitted DeAngelis' testimony regarding the family's involvement with Colorado DHS prior to Triton's birth. Hunter argues the parents' due process rights were violated because they were not given prior notice of the evidence and it was relevant to the juvenile court's decision to terminate their parental rights under § 43-292(2), which allows a court to terminate parental rights due to abuse and neglect of a sibling. We do not address this argument because Hunter did not assign it as error. See *In re Interest of Quiotis C., supra*.

### (d) Summary

Having conducted a de novo review of the record, we find that the juvenile court employed fundamentally fair procedures during the proceedings and no prejudicial error exists as it relates to the evidentiary errors assigned. The evidence rules do not apply in cases involving the termination of parental rights, and the parents' due process rights were not abridged. We find Hunter's assignment of error regarding the erroneous admission of evidence to be without merit.

### 2. TERMINATION OF PARENTAL RIGHTS

Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *Id*.

### (a) Statutory Grounds for Termination

Section 43-292(7) allows termination of parental rights when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. Subsection (7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. See *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). In a case of termination of parental rights based on § 43-292(7), the protection afforded to the rights of the parent comes in the best interests step of the analysis. *In re Interest of Cameron L. & David L., supra*.

Here, it is undisputed that the children have been in out-of-home placement for 15 or more of the most recent 22 months and Hunter does not assign termination under this subsection as error. Triton and Hazelynn were removed from Casey and Hunter's home on March 30, 2022. The State filed its motion for termination of parental rights on August 7, 2023. At that time, the children had been out of the home for just over 16 months. See *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023) (existence of statutory basis alleged under § 43-292(7) should be determined as of date petition or motion to terminate is filed). Thus, the statutory requirement of § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any

other statutory ground. *In re Interest of Cameron L. & David L., supra*. Because the State presented clear and convincing evidence the children had been in out-of-home placement for 15 or more of the most recent 22 months, statutory grounds for the termination of Casey and Hunter's parental rights exist. Given this finding, we need not discuss Hunter's assignments of error pertaining to other subsections of § 43-292.

(b) Best Interests

Hunter assigns, and both parents argue, that the juvenile court erred in finding the State had presented clear and convincing evidence that termination of their parental rights was in the children's best interests. We find that the juvenile court did not error in its determination and affirm its decision.

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. *In re Interest of Cameron L. & David L., supra*. See, also, § 43-292. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *In re Interest of Cameron L. & David L., supra*. There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id*. This presumption is overcome only when the State has proved that the parent is unfit. *Id*. This second hurdle is a high one for the State, since a parent's right to raise his or her children is constitutionally protected. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

Although the term "unfitness" is not expressly stated in § 43-292, we have said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*.

Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015). The Supreme Court has said the 15-month condition contained in § 43-292(7) provides a reasonable timetable for parents to rehabilitate themselves. See *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

Triton and Hazelynn first came to the attention of DHS in 2017, and between Colorado and Nebraska, DHS and DHHS have investigated a plethora of reports concerning the children's welfare. Triton and Hazelynn were adjudicated as endangered children by reason of their parent's faults in July 2022. Between July 2022 and the time of trial in December 2023, DHHS provided the family with numerous services to achieve case plan goals and keep the family together. The case plan goals were for Casey and Hunter to (1) address any drug use they may have, (2) address their mental health needs, and (3) work on parenting skills and supervision.

At the termination trial, Kurz testified that the case plan goals had remained the same throughout the case and that neither parent had achieved them. Based on this and other supporting

evidence set forth above, the juvenile court ultimately found there was clear and convincing evidence that termination of Casey and Hunter's parental rights was in the children's best interests. Upon our de novo review, we agree.

*(i) Termination of Hunter's Parental Rights*

Hunter argues that termination of his parental rights is not within Triton and Hazelynn's best interests because he is committed to continuing to make the changes necessary to reunify with them. We disagree.

The State may prove that termination of parental rights is in the child's best interests when the parent has willingly failed to show continuous improvement regarding case plan goals so long as the case plan imposes reasonable requirements and is conducted under the direction of the juvenile court. See *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985). See, also, *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

Here, we find the case plan was reasonable and that the juvenile court held numerous review and dispositional hearings and oversaw the conducting of the plan. At the termination hearing, the State presented evidence showing Hunter had not made adequate attempts to meet the goals set by the case plan and had failed to properly address his drug use, mental health issues, and his inadequate parenting skills.

The case plan required Hunter to submit to weekly drug testing and maintain sobriety. However, Hunter continuously refused to submit to drug patch testing. He tampered with the patches frequently and, when they could actually be tested, the patches continuously tested positive for THC. He also refused urinalysis testing and testified that his refusal was due to him using drugs and avoiding being caught. Moreover, Hunter relapsed on methamphetamine while actively participating in an inpatient addiction treatment program. Hunter's alcohol and drug use did not improve when facing the consequence of losing his children; it in fact only became worse.

In regard to the second case plan goal, Hunter was required to address his mental health issues and he failed to adequately do so. In fact, during the pendency of this case, he attempted suicide and had been hospitalized due to suicidal ideations. A psychological evaluation was performed, and Hunter was diagnosed with PTSD, major depression with psychotic symptoms, and antisocial and avoidant personality disorder. It was recommended that Hunter be involved in personal therapy with some element of sex offender treatment. Testimony given at the trial opined that Hunter needed to participate in sex offender treatment to protect himself from any temptation to sexually abuse his own children and to make him more empathetic to his daughter's behaviors and her emotional needs related to her own sexual abuse. At the time of trial, Hunter had not participated in sex offender treatment and his involvement with mental health treatment had been minimal at best.

While Hunter did briefly attend personal therapy, he was ultimately dismissed for failing to keep his appointments. Hunter did not start counseling again for over a year, despite knowing that he would be required to address his mental health before his children would be returned to his custody. Although he contended that he had been on multiple counseling waitlists, Kurz testified he had never asked DHHS for assistance in finding such services.

As to the third case plan goal, there was ample concern regarding Hunter's parenting skills. Nearly every witness who interacted with Hunter testified that he was angry and aggressive, often

toward the children. Kurz testified that she was notified that the family therapist had terminated the family counseling due to Hunter's conduct and anger issues during counseling. Casey testified that the family counseling lasted only during March and April 2023. Hunter also personally testified that he exemplified anger at various times during visits.

Although Hunter completed Circle of Security, and some testimony supported improvement in Hunter's behavior, the supervised visitation worker testified that she frequently needed to reprimand Hunter during visitations for his aggressive behavior toward the children and that she saw no improvement in his ability to parent throughout her time supervising the family's visits. She testified she left the position in February 2023, hoping that someone else could help the parents make progress, since she had seen none during her time with the family.

Hunter argues that that it would not be in the children's best interests to terminate parental rights because the children have a close bond with him and Casey. Hunter points to the fact that the children were often excited to see their parents, but testimony at trial showed that neither child felt strongly about continuing to have a relationship with their parents. Kurz testified that Hazelynn specifically stated, in regard to visitations with her parents, that she could "take them or leave them." The supervised visitation worker testified that Hunter would frequently dismiss the children when they spoke to him and that he did not bond well with the children.

We find Hunter's argument to be without merit given there was no testimony that the children had bonded with the parents such that they would be harmed by termination of Casey and Hunter's parental rights. See, e.g., *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Hunter also argues that testimony regarding the children's improvement while in foster care disregards the bond the children have with the parents and, if the parents had been given the opportunity for reunification, similar improvement could have been made within the family home. The testimony Hunter points us to explained that the children had greatly improved because the foster home provided them with stability and structure. On appeal, Hunter argues he could have provided the same if given the chance.

The best interests analysis is centered on a premise that absent parental unfitness, preserving the relationship between a parent and child will be in the child's best interests. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). We are expressly forbidden by statute from considering the foster parents' fitness in that assessment. *Id.*; Neb. Rev. Stat. § 43-292.02 (Cum. Supp. 2024). Under § 43-292.02, the foster parents' fitness and willingness to adopt "shall have no bearing on whether parental rights shall be terminated." See *In re Interest of Mateo L. et al., supra*.

> The juvenile court expressly stated in its order that
> [I]ts decision as to termination of parental rights is solely focused on the statutory ground alleged, the parents' conduct, and the best interests of the children. [The foster mother's] willingness to provide permanency for the children has no impact on the Court's analysis of the Motion to Terminate Parental Rights.

Disregarding any evidence of the foster parent's fitness and stability, in our de novo review of the record, we find that termination of Hunter's parental rights is in both children's best interests.

### (ii) Termination of Casey's Parental Rights

As stated previously, Casey failed to set forth assignments of error in a separate section of her brief; therefore, we review her appeal for plain error only. For the reasons set forth above, we determine that the State met its burden to prove a statutory basis for termination under § 42-292(7). We turn now to a plain error review of best interests.

Without discrediting the progress Casey made, we determine that termination of her parental rights is in the best interests of her children. One of Casey's case plan goals was to address her mental health issues. Casey testified that multiple mental health professionals had recommended she attend a rape and domestic abuse program to address the domestic abuse in her relationship, but that she had never attended the program, nor did she want to. She fails to recognize the impact this has on her children.

Likewise, Casey's prognosis as a parent is "not good," according to Meidlinger. He explained that her children are "high needs children" who need a parent that is able to deal with complex issues, which Casey is unable to do. Triton and Hazelynn had been out of home for 20 months at the time of the termination hearing. But Casey has been involved with the DHS and DHHS for years prior to that. Despite the many services offered, Casey has not availed herself of many opportunities and continues to suffer the same deficiencies that have plagued her for years.

Parental unfitness is a personal deficiency or incapacity which has prevented or will probably prevent performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Our de novo review of the record reveals that Casey is an unfit parent, and that termination of her parental rights is in the best interests of Triton and Hazelynn. We find no plain error in the juvenile court's orders terminating her parental rights.

### VI. CONCLUSION

For the foregoing reasons, we affirm the orders of the juvenile court terminating Casey's and Hunter's parental rights to Triton and Hazelynn.

AFFIRMED.